**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 46262**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **Opinion Filed: March 10, 2020** |
| Plaintiff-Respondent, | ) | |
| | ) | **Karel A. Lehrman, Clerk** |
| v. | ) | |
| | ) | |
| ABDON ANDRE SAENZ, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. George A. Southworth, District Judge.

Judgment of conviction for aggravated battery, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant. Brian R. Dickson argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

_____

HUSKEY, Chief Judge

Abdon Andre Saenz appeals from his judgment of conviction for aggravated battery. Saenz argues the prosecutor's references to facts not in evidence and reliance on misrepresentations of facts during closing arguments amounted to fundamental error. Because the prosecutor did not misrepresent facts and any reference to facts not in evidence did not constitute fundamental error, we affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

One evening while drinking and socializing in a bar, Saenz walked outside with a glass of beer. The bar did not have an outside patio and to have alcohol outside of the building was in violation of the bar's policies and the city's ordinance. The bartender went outside, explained to Saenz that alcohol was not allowed outside, confiscated Saenz's glass, and returned to the bar.

1

Saenz followed the bartender inside and the two continued to discuss the events that had just transpired. Rodolfo, a man who was drinking and socializing with Saenz, joined the conversation. The conversation ended amicably, with Saenz and Rodolfo shaking the bartender's hand.

Later the same evening, Saenz exited the bar with a glass of alcohol in each hand and Rodolfo followed, empty-handed. A customer gestured to the bartender that alcohol was outside the building, and the bartender left to assess the situation. The bartender testified that, although multiple people were outside, only Saenz was holding glasses of alcohol. When the bartender reminded Saenz that no alcohol could be outside the building, the bartender testified Saenz threw one of the glasses at him, missing him as he ducked. The bartender testified that as he lifted his head back up, Saenz smashed another glass directly into his face causing facial and dental damage. The State charged Saenz with aggravated battery, Idaho Code § 18-907.

During the three-day jury trial, twelve witnesses testified and thirty-five exhibits were admitted, including thirty-eight minutes of audio recordings of interviews conducted by officers investigating the battery, fifty-six minutes of video footage from security cameras located inside the bar, and eighty seconds of partially redacted body camera recordings from officers who responded to the incident. Although Saenz did not testify at trial, the prosecution admitted audio recordings of an interview between an officer and Saenz, which recorded the following:

Saenz: I remember, like I told you before, like we had that first incident. Second incident, I remember, now I [inaudible] but I remember going outside, I was already in the car, or getting ready to go in the car, I don't know whose car it was, I'm not going to lie about that.

Officer: Ok. Was it a Cadillac?

Saenz: I don't remember. I just remember it was dark outside. But we were already in the street.

Officer: Ok.

Saenz: And, umm, he came at me. I don't know if he came at me, I don't know, I don't remember his aggression or anything. But, umm, you know. [Inaudible], I don't know, like I said. I don't remember hitting him. I looked through those pictures, man, after you told me, and you showed me, and then I went looking for it. His face is messed up pretty bad. I feel bad if I did do it but, like I said, if I did do it I should have had some marks on me also.

During closing argument, the prosecutor re-played the audio of Saenz's interview and proceeded to paraphrase the recording, stating:

Did you catch that? [Saenz] says: I was leaving, I was at the car, and he came at me. He's talking about [the bartender]. Remember up until now this didn't happen, this second encounter. But he says: He came at me. He confirms that outside the bar [the bartender] and him come together. He come [sic] at me. That's what he says. I don't remember his level of aggression. I don't know if he was aggressive. In other words, he's saying: I don't know think [sic] he approached me aggressively, but he came at me. He confirms that in fact there was a second encounter between [the bartender] and him as he was leaving the bar. He messed up there.

You notice he doesn't say that he came at Rodolfo or he came at Vanessa or I saw him approach someone else. No. He came at me. Whoa. He just messed up. He just confirmed everything we've been trying to argue about whether the defendant and [the bartender] came together during the second encounter. He just told you that happened. He just confessed that happened. He messed up. But now you know in his own words that second encounter happened. That's what we've been arguing about; right? He just tells you: Yep, that happened.

Saenz's counsel responded to the prosecutor's statements during his closing argument, asking the jury to consider the defendant's statements in their entire context, but admitting that Saenz acknowledged a second encounter with the bartender:

And [Saenz] even remembers. The guy came at me. I didn't know what to do. A guy came at me. Now he's confirmed the second one. Guy came at me. Doesn't say: I bashed him in the face with glass. Doesn't say: I hit him with the glass. He does admit: I may have punched him. But he also doesn't say: We were right here and right here. We were right next to each other. We did this. We did that.

So just because myself or [the prosecutor] says something, it's up to you to actually make the determination as to what the person said, what impact it has, whether or not you believe it is an admission to aggravated battery or not.

The prosecutor then made a rebuttal argument, which substantively consisted of the following:

I was sitting in my office, and I had listened to hours of interviews. I had tried to describe the details of what people said. I read all the police reports and watched all the videos. And I was sitting there with all of these facts bouncing around in my head. And the thought occurred to me: Is there one person, one person who says the defendant wasn't there? The defendant didn't do this. Or it was somebody else. Not one.

And so as I listen to the defense go through some of those same facts, I come back with the very same thing. Not one person says the defendant didn't do this. Or he wasn't there. Or identifies somebody else as doing this. Just him. The person who admits to Rodolfo that he was pissed about the way he was treated. And the person who slips up and admits there was a second encounter when I was leaving and [the bartender] came at me. The person with the beer

3

glasses. Not that he came with someone else. Not that he came with Rodolfo. He came at me. And when you have that, you have one person. And I'm asking you to find him guilty.

Saenz's counsel offered no objection to the prosecutor's rebuttal closing argument. After deliberation, the jury found Saenz guilty of aggravated battery. The district court entered judgment and imposed a unified sentence of ten years, with three years determinate. Saenz timely appeals.

## II.

## STANDARD OF REVIEW

Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). In order to obtain relief under the fundamental error doctrine, the defendant must demonstrate three things. *State v. Miller*, 165 Idaho 115, 119, 443 P.3d 129, 133 (2019). First, the defendant must show that one or more of the defendant's unwaived constitutional rights were violated. *Id.* Second, the error must be clear and obvious, meaning the record must demonstrate evidence of the error and evidence as to whether or not trial counsel made a tactical decision in failing to object. *Id.* Third, the defendant must demonstrate that the error affected the defendant's substantial rights, which means the error identified in the first and second prongs of the test actually affected the outcome of the trial. *Id.* at 119-20, 443 P.3d at 133-34.

## III.

## ANALYSIS

On appeal, Saenz alleges the State committed misconduct rising to the level of fundamental error in its closing argument by: (1) impermissibly arguing facts not in evidence by referencing interviews, videos, and police reports that were not admitted for the jury's consideration; and (2) misrepresenting facts by describing Saenz's statement that "[the bartender] came at me" as a confession and failing to put the statement in the proper context. The State argues Saenz's assertions fail every prong of the fundamental error analysis.

A. **Saenz Has Not Shown His Counsel's Lack of Objection to the Prosecutor's References to Facts Not in Evidence Was Not Tactical**

Saenz asserts the prosecutor's references to interviews, videos, and police reports that were not in evidence constituted prosecutorial misconduct and amounted to fundamental error because: (1) they impacted Saenz's right to a fair trial under the Fourteenth Amendment of the

4

United States Constitution; (2) they constituted clear error under *State v. Branigh*, 155 Idaho 404, 313 P.3d 732 (Ct. App. 2013); (3) defense counsel's failure to object was not tactical because the prosecutor's statements implicated Saenz's alternative-perpetrator theory and, as the statements occurred during the rebuttal argument, a contemporaneous objection was the only means by which the defense could address the perceived prosecutorial misconduct; and (4) the statements affected the trial's outcome because they directly related to the core of Saenz's defense.[1]

The State argues the prosecutor's reference to the interviews, videos, and police reports were not objectionable, and thus, could not violate Saenz's constitutional rights.[2] Alternatively, the State contends, even if the statements could be construed as an assertion of facts not in evidence, there is no indication that they rise to the level of a constitutional violation, constitute clear error, or impacted the trial's outcome.

Even if the prosecutor's statements constituted error, which we do not address, Saenz cannot establish prong two or three of the fundamental error analysis. The federal court's development of the plain error standard developed from a recognition of the important considerations underlying the contemporaneous objection requirement and a defendant's right to due process. *United States v. Atkinson*, 297 U.S. 157, 159 (1936). The United States Supreme Court recognized the limited scope of plain error review when it articulated the multi-prong standard of review in *United States v. Olano*, 507 U.S. 725, 736 (1993). The Court noted that even when a defendant shows: (1) error; (2) that is plain; and (3) that affects substantial rights, the appellate court should only correct the error when it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* This standard intentionally places a heavy

---

[1] Saenz additionally argues the misconduct impacted the trial's outcome because the prosecutor essentially asked the jury to overlook any holes in the State's case because interviews, polices reports, and videos that were not admitted as evidence support Saenz's guilt. However, it does not appear from a reading of the prosecutor's statements that the prosecutor made this assertion and, therefore, this claim will not be addressed.

[2] The State contends that if the interviews, videos, and police reports in question supported Saenz's claim of an alternative-perpetrator, Saenz would have sought to enter the evidence during the trial. Therefore, the State argues the prosecutor's statements did not constitute a reference to facts not in evidence, but instead were permissible arguments concerning the absence of evidence to support certain facts under *State v. Mendoza*, 151 Idaho 623, 262 P.3d 266 (Ct. App. 2011).

burden on defendants:  "[m]eeting all four prongs is difficult, as it should be." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (internal quotation omitted).

The Idaho Supreme Court modeled Idaho's fundamental error standard on the United States Supreme Court's articulation of plain error review, holding that it struck an appropriate balance of the interests of the State and the defendant. *State v. Perry*, 150 Idaho 209, 226, 245 P.3d 961, 978 (2010).  In replicating this balancing, *Perry* sought to limit the cases in which the fundamental error standard would apply and further constrained review of unobjected to error to a narrower set of claims than the federal plain error standard.  *Id.*  (holding "contrary to federal plain error rule, in Idaho a trial error that does not violate one or more of defendant's constitutionally protected rights is not subject to reversal under fundamental error doctrine").

In *Miller*, the Idaho Supreme Court further established that fundamental error claims of unobjected-to error should be limited to a narrow category of cases by clarifying the second and third prongs of the fundamental error standard.  The Court held that under the second prong a defendant must show the appellate record contains:  (1) clear and obvious evidence of the error; and (2) evidence as to whether or not trial counsel made a tactical decision not to object.  *Miller*, 165 Idaho at 119, 443 P.3d at 133.  And, under the third prong, the appellate record must clearly show that the error actually affected the outcome of the proceedings.  *Id.* at 119-20, 443 P.3d at 133-34.

The Court's clarification of the fundamental error analysis reflects the understanding that 20/20 hindsight of presumptively strategic decisions, like "[c]ounsel's choice of witnesses, manner of cross-examination, and lack of objection to testimony," is often inappropriate. *State v. Abdullah*, 158 Idaho 386, 500, 348 P.3d 1, 115 (2015).  This is because there are legitimate reasons why counsel may make the strategic decision to remain silent at various stages of the trial or not object to specific pieces of evidence.  For example, counsel's removal of a problematic potential juror from the venire risks that an even less acceptable individual moves onto the jury panel, *State v. Adams*, 147 Idaho 857, 861, 216 P.3d 146, 150 (Ct. App. 2009), counsel's continuous objections to the State's presentation of evidence risks equally aggressive tactics being used in return, and counsel's objection to a particularly unfavorable piece of testimony risks highlighting the statement to the jury. *See State v. Hall*, 163 Idaho 744, 826, 419 P.3d 1042, 1124 (2018).  Thus, because calculation and chance are inherent in all strategic

6

decisions, trial counsel must weigh the possibility that the strategy utilized may not ultimately pay off for the defendant, but the reward is worth the risk.

Both the United States Supreme Court and the Idaho Supreme Court have stated that claims of unobjected-to error should be the exception, not the rule. However, since *Perry*, asserting claims of fundamental error have become the rule, not the exception, particularly claims of prosecutorial misconduct in closing argument. A claim of this type poses challenges for the appellant on direct review because when an appellant asserts fundamental error, the appellate court is asked to determine whether trial counsel's inaction was the result of a strategic or tactical decision, often without the aid of a developed record.

In determining whether the lack of an objection by trial counsel was tactical, the court begins with the strong presumption that counsel was competent and trial tactics were based on sound legal strategy. *See State v. Dunlap,* 155 Idaho 345, 383, 313 P.3d 1, 39 (2013); *Cook v. State*, 157 Idaho 775, 778, 339 P.3d 1179, 1182 (Ct. App. 2014). The appellate court does not review the presumptively strategic or tactical decisions "unless those decisions are based on inadequate preparation, ignorance of the relevant law, or other shortcomings capable of objective review." *Johnson v. State*, 156 Idaho 7, 11, 319 P.3d 491, 495 (2014) (internal quotation omitted). The Idaho Supreme Court has articulated a non-exclusive list of examples of generally strategic decisions. *See Abdullah*, 158 Idaho at 500, 348 P.3d at 115 ("counsel's choice of witnesses, manner of cross-examination, and lack of objection to testimony fall within the area of tactical, or strategic decisions").

The defendant's opinion that the absence of an objection was not tactical is not enough to overcome the presumption of competence. *Miller*, 165 Idaho at 119, 443 P.3d at 133. Rather, there must be actual evidence in the record that demonstrates the lack of objection was not tactical; in essence, rebutting the presumption of competence. *See id.* This application of the second prong of the *Perry* standard is consistent with the constrained and narrow review of when relief is warranted for unobjected-to error as articulated by the United States Supreme Court in *Puckett* and the Idaho Supreme Court in *Perry* and *Miller*. This clarifies what the appellant must establish on direct review. The only evidence that would support appellant's claim of clear error is evidence that the absence of an objection was not strategic or tactical. Requiring evidence in the record to support the second prong of *Perry* as clarified in *Miller* explains why appellant's opinion (without more) is insufficient to establish clear error in the record.

At its core, a claim of unobjected-to error is as much about what defense counsel did not do as it is about what the State did. A lack of a sufficiently developed factual record generally precludes direct review of such claims. *Sparks v. State*, 140 Idaho 292, 296, 92 P.3d 542, 546 (Ct. App. 2004). Like claims of ineffective assistance of counsel, establishing prong two of the *Perry* standard will necessarily involve inquiring into the behavior and motivations of trial counsel. These inquiries will usually require factual development of the record, and thus, like post-conviction claims, are not suited to direct review. This is not to say a defendant could never establish fundamental error. *See State v. Medina*, 165 Idaho, 501, 509, 447 P.3d 949, 957 (2019) (holding there was not conceivable strategy to support failure to object to erroneous jury instruction because instruction made it vastly easier for jury to find defendant guilty). However, in those cases where the factual record needs to be developed, the forum for review shifts from direct review to post-conviction review. *See Perry*, 150 Idaho at 229, 245 P.3d at 981. Here, the record is insufficient for Saenz to establish his claim.

Based on the strong presumption that trial counsel was competent and his behaviors were the result of strategic or tactical decisions, Saenz must be able to point to evidence in the record that affirmatively establishes the opposite in order to meet prong two of the fundamental error analysis. If the record does not contain such evidence, Saenz cannot support his claim, and the claim is more appropriately addressed through a petition for post-conviction relief. *Perry*, 150 Idaho at 229, 245 P.3d at 981. Saenz has not met his burden under the second prong of the fundamental error analysis because the record contains evidence that, like in *Perry*, trial counsel made a strategic decision not to object.

The Idaho Supreme Court held a record contained evidence of a strategic decision when defense counsel objected at least once when faced with successive opportunities to object to prosecutorial misconduct. *Id.* In *Perry*, because defense counsel recognized the benefit of a timely objection, but failed to object to other instances of similar conduct, the Court held "[i]t appears to be a reasonable possibility, under the facts of this case, that defense counsel's failure to object to the prosecutor's improper conduct . . . was a strategic decision." *Id.*

Here, the prosecutor's closing argument stated that he listened to "hours of interviews" and "read all the police reports and watched all the videos" when no police reports had been submitted as evidence and portions of the interviews and the videos had been redacted or not played for the jury. The prosecutor proceeded to tell the jury these documents contained no

8

corroboration of Saenz's theory of defense. Even if the State erred when it referred to facts that were not presented at trial, Saenz cannot establish a claim of fundamental error.

During the State's closing argument, the record indicates defense counsel utilized objections when counsel found them appropriate, particularly concerning facts that undermined Saenz's innocence. For example, when the prosecutor emphasized that Saenz did not proclaim his innocence to an interviewing officer, but rather seemed resolved to the likelihood of the State issuing a warrant for his arrest, Saenz's counsel objected to the statements as speculative. The district court overruled Saenz's objection. The prosecutor later referenced the facts not in evidence at issue here. The facts again undermined Saenz's innocence and Saenz's counsel remained silent. Because Saenz's counsel demonstrated a willingness to object to some statements during closing arguments that spoke to Saenz's innocence, we cannot say the record clearly establishes that trial counsel's silence in other instances was not strategic.

Saenz argues the lack of objection was not strategic because the prosecutor's comments directly undermined the core of Saenz's defense and the statements were made without the opportunity for later rebuttal. However, this is not entirely correct nor do these facts alone overcome the presumption that defense counsel's silence was strategic. Defense counsel could have objected during the prosecutor's rebuttal argument, just as counsel did during the prosecutor's initial closing argument. Additionally, in executing his trial strategy, defense counsel may not have wanted to bring increased attention to a singular reference to facts not in evidence just moments from the commencement of jury deliberations. As *Miller* clarified, appellate counsel's opinion that the decision not to object could not have been tactical is not enough to satisfy the second prong of the fundamental error analysis. *Miller*, 165 Idaho at 115, 443 P.3d at 133. Instead, the record must include evidence that trial counsel did not make a tactical decision to not object. Because the record includes evidence that defense counsel utilized strategy in its objections during closing arguments and because Saenz points to no evidence that overcomes the presumption that trial counsel's silence was strategic, Saenz failed to meet the burden of establishing clear error in the record under the second prong of the fundamental error analysis.[3]

---

[3] Saenz contends this Court held in *State v. Branigh*, 155 Idaho 404, 313 P.3d 732 (Ct. App. 2013) that when the prosecutor referred to evidence not admitted at trial, the record showed no strategic reason for counsel's lack of an objection. However, the analysis in *Branigh* rested

**B.** **Saenz Cannot Establish the Error Actually Affected the Outcome of the Trial**

However, even if Saenz was able to meet his burden of establishing clear error in the record, Saenz has not shown this error actually affected the outcome of the trial as required under the third prong of the fundamental error analysis. *Miller*, 165 Idaho at 119-20, 443 P.3d at 133-34.

Courts have consistently held prosecutorial misconduct during closing arguments will rise to the level of fundamental error only if the misconduct was so egregious or inflammatory that any ensuing prejudice could not have been remedied by a curative jury instruction informing the jury to disregard the comments. *State v. Gross*, 146 Idaho 15, 18, 189 P.3d 477, 480 (Ct. App. 2008); *see also State v. Parker*, 157 Idaho 132, 146, 334 P.3d 806, 820 (2014); *State v. Cortez*, 135 Idaho 561, 565, 21 P.3d 498, 502 (Ct. App. 2001). "The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Lankford*, 162 Idaho 477, 497, 399 P.3d 804, 824 (2017) (internal quotation omitted). Meeting this standard demonstrates the misconduct actually impacted the trial because "even a timely objection to such inflammatory statements would not have cured the inherent prejudice." *Gross*, 146 Idaho at 18, 189 P.3d at 480.

When assessing the impact of a remedial jury instruction "this Court presumes the jury followed the court's jury instructions," *Miller*, 165 Idaho at 118, 443 P.3d at 136, even when the prosecutorial misconduct occurs after the jury receives its instructions from the trial court. *See State v. Tupis*, 112 Idaho 767, 773, 735 P.2d 1078, 1084 (Ct. App. 1987). Because even persistent instances of prosecutorial misconduct have the potential to be remedied through a single curative instruction, *see Lankford*, 162 Idaho at 499-501, 399 P.3d at 826-828, a defendant may shoulder a heavier burden when the complained of misconduct consisted of a single, isolated occurrence. *See State v. Alwin*, 164 Idaho 160, 173, 426 P.3d 1260, 1273 (2018) (highlighting trial court's jury instruction cured any resulting prejudice from prosecutorial

---

almost entirely on the third prong of the fundamental error analysis; its analysis of whether the error was clear from the appellate record consisted entirely of the sentence "Branigh has also shown that the error plainly exists." *Id.* at 418, 313 P.3d at 746. *Branigh* is not persuasive, much less dispositive, in its application. In *Branigh*, we held Branigh failed to establish the error was harmless because of "the overwhelming evidence of Branigh's guilt." *Id.*

misconduct because comment constituting misconduct was "brief, and occurred on a single, isolated occasion").

Further, the timing of the alleged prosecutorial conduct by itself is not enough to show the conduct impacted the trial's outcome or establish that it is beyond the reach of a curative jury instruction. This Court has acknowledged the potential increased impact prosecutorial misconduct in a rebuttal closing argument may have. *See State v. Troutman*, 148 Idaho 904, 909-10, 231 P.3d 549, 554-55 (Ct. App. 2010). However, just because prosecutorial misconduct occurs in the rebuttal closing argument does not mean that it actually impacted the trial's outcome or is outside the reach of a remedial instruction. *See State v. Godwin*, 164 Idaho 903, 928-29, 436 P.3d 1252, 1277-78 (2019); *State v. Severson*, 147 Idaho 694, 720, 215 P.3d 414, 440 (2009); *Tupis*, 112 Idaho at 773, 735 P.2d at 1084.

Additionally, courts have held a proper jury instruction may cure even prosecutorial misconduct that had the potential to impact the core issue of a case. *See Godwin*, 164 Idaho at 928-29, 436 P.3d at 1277-78 (2019) (holding court's instructions informing jury that attorney's comments were not evidence helped mitigate three instances of prosecutor improperly vouching for reliability of State's witnesses' testimony that undermined defendant's principle claim of self-defense); *Alwin*, 164 Idaho at 173, 426 P.3d at 1273 (holding prosecutorial misconduct that improperly undercut defendant's expert testimony on reliability of identifications, where main issue at trial concerned reliability of officer's identification, could be cured by jury instruction stating closing arguments of attorneys are not evidence). Therefore, neither the timing nor the substance of the prosecutorial misconduct is necessarily dispositive when assessing the effect of a remedial jury instruction.

Here, Saenz has not met his burden to show the prosecutor's isolated reference to facts not in evidence during closing argument actually impacted the trial because the district court repeatedly provided instructions to the jury about what was, and was not, proper evidence for consideration. First, the district court instructed the jury it could not consider closing arguments as evidence, bookending the trial process with such statements. Before opening arguments, the district court stated that after the close of evidence, the parties would present closing arguments: "In their closing arguments they will summarize the evidence to help you understand how it relates to the law. Just as the opening statements are not evidence, neither are the closing arguments." At the close of evidence, the court again instructed the jury: "Certain things you

11

have heard or seen are not evidence, including: [] arguments and statements by the lawyers. The lawyers are not witnesses. What they say in their opening statements, closing arguments, and at other times is included to help you interpret the evidence but is not evidence."

Additionally, the district court instructed the jury that they "may consider only the evidence admitted in this trial. The evidence consists of the testimony of the witnesses, the exhibits offered and received, and any stipulated or admitted facts." The court specifically cautioned the jury to be careful when considering redacted evidence: "You saw a video recording with audio and heard audio recordings. Certain recordings may have been redacted. You are not to concern yourself with the redactions or speculate as to what may have been removed." Saenz has not presented argument that the jury did not follow the instructions of the trial court. Instead, Saenz argues the prosecutor's statements concerning evidence not presented at trial actually affected the trial's outcome because the comments related to the core question of Saenz's guilt and were made in the rebuttal closing, right before the jury began deliberations. We find this argument unpersuasive.

During the three-day trial, the prosecutor referenced the facts at issue on a single, isolated occurrence, while the district court instructed the jury throughout the trial not to consider statements made by attorneys in closing arguments as evidence. Further, the court instructed the jury that only evidence admitted at trial could be considered, and the court specifically instructed the jury to refrain from any speculation as to redacted or undisclosed portions of the video and audio recordings. Therefore, Saenz has not shown the prosecutor's singular reference to facts not in evidence was so egregious or inflammatory that any ensuing prejudice could not have been remedied by the district court's jury instructions.

As this case demonstrates, claims of fundamental error involving allegations of prosecutorial misconduct in closing argument will rarely be able to satisfy the second and third prongs of the *Perry*/*Miller* analysis because seldom will the record contain evidence to overcome the presumption that trial counsel's lack of objection was strategic *and* that the jury did not follow the instructions of the trial court, both of which are necessary to prevail on the claim.

**C.    Saenz Has Not Shown That the State Misrepresented Facts During Its Closing Argument**

Saenz argues the prosecutor mispresented evidence by stating that Saenz "confessed" that "the [bartender] came at him." Saenz asserts the State improperly construed Saenz's statements as a confession and failed to put it in proper context by excluding his contemporaneous statement

12

of "I don't know if he came at me" in its closing arguments. The State asserts there was no misrepresentation and Saenz cannot establish fundamental error.

The first step in a fundamental error analysis for prosecutorial misconduct "is to determine whether the alleged conduct actually rises to the level of prosecutorial misconduct." *Lankford*, 162 Idaho at 494, 399 P.3d at 821. Closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. *Phillips*, 144 Idaho at 86, 156 P.3d at 587. Its purpose is to enlighten the jury and to help the jurors remember and interpret the evidence. *Id.*; *State v. Reynolds*, 120 Idaho 445, 450, 816 P.2d 1002, 1007 (Ct. App. 1991). Although a closing argument may not misrepresent or mischaracterize the evidence, *Phillips*, 144 Idaho at 86, 156 P.3d at 587, "[b]oth sides have traditionally been afforded considerable latitude in closing argument to the jury and are entitled to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom." *State v. Sheahan*, 139 Idaho 267, 280, 77 P.3d 956, 969 (2003). "Whether comments during closing arguments rise to the level of fundamental error is a question that must be analyzed in the context of the trial as a whole." *Lankford*, 162 Idaho at 497, 399 P.3d at 824. If a statement is a reasonable inference from the evidence presented, it is not a misstatement of evidence and therefore will not constitute prosecutorial misconduct. *Miller*, 165 Idaho at 119, 443 P.3d at 137.

In support of Saenz's assertion that the prosecutor's statement constituted a misrepresentation of evidence, Saenz compares the prosecutor's statements suggesting that he "confessed" that "[the bartender] came at him" to the statements made by the prosecutor in *State v. Beebe*, 145 Idaho 570, 575, 181 P.3d 496, 501 (Ct. App. 2007). In *Beebe*, the defendant was charged with attempted robbery, an offense that required the State to establish the defendant intended to use force or fear to overcome the will of the victim. The defendant argued that, in light of his severe mental illness, he did not possess the requisite state of mind necessary to be found guilty of the offense. Despite no testimony that the defendant stated he intended to commit robbery or to use force or fear to commit the robbery, the prosecutor said the defendant repeatedly, persistently, and consistently confessed to having the disputed intent. This Court held these statements by the prosecutor constituted misrepresentation of evidence. *Id.*

Here, unlike *Beebe*, the prosecutor did not use Saenz's statement that "[the bartender] came at me" for a disputed fact. Instead, Saenz's statement that "[the bartender] came at me" was referred to by both parties throughout closing arguments for the same underlying premise;

13

after the bartender discussed the policy prohibiting alcohol outside the bar with Saenz, the two had a second encounter. In closing argument, the prosecutor stated that although Saenz initially indicated he never engaged with the bartender after the first encounter, Saenz later confirmed a second encounter. During Saenz's closing argument, his counsel acknowledged Saenz's statements that "[the bartender] came at me" showed Saenz recalled engaging in a second encounter with the bartender: "[a]nd [Saenz] even remembers. The guy came at me. I didn't know what to do. A guy came at me. Now he's confirmed the second one. Guy came at me." Despite Saenz's characterizations of the arguments on appeal, the prosecutor's closing argument did not state that Saenz confessed to the crime or portray that Saenz's statement "[the bartender] came at me" stood for more than what Saenz's own counsel admitted; a second encounter occurred between Saenz and the bartender. Therefore, Saenz failed to show the statements at issue constituted prosecutorial misconduct.

## III.

## CONCLUSION

Saenz cannot show clear error in the record related to the allegations that the State referenced facts not in evidence because any error was neither clear from the record nor so egregious or inflammatory that any ensuing prejudice could not have been remedied by the district court's jury instructions. Further, the prosecutor's comments regarding Saenz's statements acknowledging a second encounter between himself and the victim did not constitute prosecutorial misconduct. Accordingly, Saenz's judgment of conviction is affirmed.

Judge GRATTON and Judge LORELLO **CONCUR**.

14