# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 46703

STATE OF IDAHO,

        Plaintiff-Respondent,

v.

ZANE EUGENE LUMPKIN,

        Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

Filed: October 22, 2020

Melanie Gagnepain, Clerk

THIS IS AN UNPUBLISHED
OPINION AND SHALL NOT
BE CITED AS AUTHORITY

---

Appeal from the District Court of the First Judicial District, State of Idaho, Bonner County. Hon. Barbara Buchanan, District Judge.

Judgment of conviction and sentence for possession of a controlled substance, methamphetamine, and persistent violator enhancement, affirmed; and order for public defender reimbursement, vacated.

Eric D. Fredericksen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Chief Judge

Zane Eugene Lumpkin appeals from his judgment of conviction and sentence for possession of a controlled substance, methamphetamine, Idaho Code § 37-2732(c)(1), with a persistent violator sentencing enhancement, I.C. § 19-2514. Lumpkin first argues the prosecutor's references to a jury instruction during closing argument amounted to fundamental error. Second, Lumpkin argues the district court abused its sentencing discretion by imposing a five-year sentence and ordering Lumpkin to pay $500 in public defender reimbursement. We affirm the district court's judgment of conviction and sentence. However, we vacate the district court's order for public defender reimbursement.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

The State charged Lumpkin with possession of a controlled substance, methamphetamine, with an enhancement alleging Lumpkin is a persistent violator. Lumpkin pleaded not guilty and the case went to trial. During trial the State called Officer Fisher, the arresting officer, who testified that he found a pipe in Lumpkin's pocket and that Lumpkin told him the pipe was used to smoke methamphetamine. Officer Fisher tested the residue inside the pipe, which came back positive for methamphetamine. During the trial the State admitted into evidence the pipe Officer Fisher found on Lumpkin's person at the time of his arrest. The State also called Christina Rayner, a forensic scientist, who testified that she tested the residue from the pipe at the Idaho State Laboratory and the residue tested positive for methamphetamine. During Lumpkin's testimony he admitted that, at the time of his arrest, he planned to purchase methamphetamine, the pipe found on him was used to smoke methamphetamine, and he knew the pipe contained residue but the residue was not usable because it was "blow off" or "garbage" from prior methamphetamine use.

After the close of evidence, the district court gave the jury various instructions, including Jury Instruction 18, which read:

> Certain items that have been admitted into evidence may contain controlled substance residue. To preclude contamination of the evidence and to preclude such residue from coming into contact with you, the evidence has been placed in sealed plastic bags. You are not to unseal the plastic bags when viewing the evidence during deliberations.

During rebuttal closing argument, the prosecutor referenced Jury Instruction 18 and stated:

> This is interesting. So it tells you, certain items that have been admitted into evidence may contain substance residue. To preclude contamination of the evidence and to preclude such residue from coming into contact with you, the evidence has been placed in sealed plastic bags.
>
> You are not to unseal the plastic bags when dealing with the evidence during deliberation. What do you think that means? If there's nothing in those ziplock bags, why would you have a jury instruction telling you don't open the bag because you might come in contact with it, right? So if you want to talk about, well, it's not a weighable amount, it's nothing, I think the defendant testified that it's nothing, it's garbage. It's nothing, it's blow-off.
>
> If it was nothing, if it's nothing, literally, why would you have an instruction specifically telling you don't open the bag, because it might contaminate you. There's obviously something in there, right; and Ms. Rayner is able to test it.

2

Defense counsel made no objection to these statements. The jury found Lumpkin guilty of possession of methamphetamine and the persistent violator enhancement.

Pursuant to his request, Lumpkin was sentenced the following the day without a Presentence Investigation Report. The State recommended a unified sentence of eight years, with five years determinate. Lumpkin recommended the district court impose "credit for time served, to suspend the enhancement with the understanding that he is going to be extradited to Washington, Judge, and you put him on two years of probation and suspend again the enhancement." The district court imposed a unified term of incarceration of five years, with two years determinate, and declined to place Lumpkin on probation. Before imposing Lumpkin's sentence, the district court stated:

> You have a horrible criminal history and you are a persistent violator in Idaho. Because of that and the jury's finding, I have to impose at least a five-year underlying sentence. Character and attitude, I don't have a presentence report, but Mr. Lumpkin, you certainly did not make this process easy.
> The Court took what I think is a very unusual step for this Court, but I brought you over to try to explain to you what you were looking at in this case; and actually, the State had made what I thought was quite a fair offer. And you, just out of hand, were not even willing to consider that.
> I tried to explain that you're going to jury trial in a case where there didn't appear to be any defense, just in reading the reports, and that you were looking at the persistent violator. And you insisted on going to trial. Mr. Lumpkin, everyone has a right to go to trial.
> Then we get to the end of the trial and you're--yesterday afternoon you're talking about being railroaded and how unfair everything was.
> So I just wanted to remind you of the fact of the choices that you made.

In addition to Lumpkin's prison sentence, the district court ordered Lumpkin to pay "$500 to Bonner County to repay some of the costs of the public defender in this case for what certainly I think was a strange decision to go to trial yesterday."

Defense counsel did not object to any of the district court's statements, the term of sentence, or the order for reimbursement. Lumpkin timely appeals.

## II.

### STANDARD OF REVIEW

Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). However, when a defendant alleges that a constitutional error occurred at trial and the alleged error was not followed by a contemporaneous objection, the claim of error must be reviewed under the fundamental error

3

doctrine. *State v. Miller*, 165 Idaho 115, 119, 443 P.3d 129, 133 (2019). In order to obtain relief under the fundamental error doctrine, the defendant must demonstrate three things. First, the defendant must show that one or more of the defendant's unwaived constitutional rights were violated. *Id.* Second, the error must be clear and obvious, meaning the record must demonstrate evidence of the error and evidence as to whether or not trial counsel made a tactical decision in failing to object. *Id.* Third, the defendant must demonstrate that the error affected the defendant's substantial rights, which means the error identified in the first and second prongs of the test actually affected the outcome of the trial. *Id.* at 119-20, 443 P.3d at 133-34.

An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

## III.

## ANALYSIS

Lumpkin first argues the State committed prosecutorial misconduct amounting to fundamental error when it referenced Jury Instruction 18 during closing argument. The State argues Lumpkin's assertion fails the fundamental error analysis. Second, Lumpkin argues the district court abused its sentencing discretion by imposing an excessive sentence and public defender reimbursement as punishment for Lumpkin's decision to go to trial. The State argues that Lumpkin fails to show the district court abused its discretion because the sentence and reimbursement were not punitively imposed.

### A.    Lumpkin Failed to Establish That the Prosecutor's Statements Amounted to Fundamental Error

Lumpkin argues, and the State concedes, that the prosecutor's statements were improper. The parties disagree that the improper statements amounted fundamental error.

Closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct. App. 2007). Its purpose is to enlighten the jury and to help the jurors remember and interpret the evidence. *Id.*; *State v. Reynolds*, 120 Idaho 445, 450, 816 P.2d 1002, 1007 (Ct. App. 1991). Both sides

4

have traditionally been afforded considerable latitude in closing argument to the jury and are entitled to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom. *State v. Sheahan*, 139 Idaho 267, 280, 77 P.3d 956, 969 (2003); *Phillips*, 144 Idaho at 86, 156 P.3d at 587.

While our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, the prosecutor is nevertheless expected and required to be fair. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007). However, in reviewing allegations of prosecutorial misconduct we must keep in mind the realities of trial. *Id.* A fair trial is not necessarily a perfect trial. *Id.*

Assuming without deciding the improper statements violated one of Lumpkin's unwaived constitutional rights, Lumpkin has not established fundamental error under either the second or third prongs of the fundamental error standard. Under the second prong of the analysis, the defendant must show the record contains evidence of the error and evidence that defendant's counsel did not make a tactical decision not to object to the error. *Miller*, 165 Idaho at 119, 443 P.3d at 133. In determining whether the lack of an objection by trial counsel was tactical, the court begins with the strong presumption that counsel was competent and trial tactics were based on sound legal strategy. *State v. Saenz*, 167 Idaho 443, 451, 470 P.3d 1252, 1258 (Ct. App. 2020); *see also State v. Dunlap*, 155 Idaho 345, 383, 313 P.3d 1, 39 (2013); *Cook v. State*, 157 Idaho 775, 778, 339 P.3d 1179, 1182 (Ct. App. 2014). The defendant's opinion that counsel did not make a strategic decision is not enough to overcome this presumption of competence. *Miller*, 165 Idaho at 119, 443 P.3d at 133. Rather, there must be actual evidence in the record that demonstrates the lack of objection was not tactical. *Saenz*, 167 Idaho at 451, 470 P.3d at 1258; *Miller*, 165 Idaho at 119, 443 P.3d at 133.

Here, Lumpkin does not point to evidence in the record to support his claim that his counsel did not make a strategic decision by not objecting to the State's remarks. Instead, he broadly argues the decision not to object cannot have been tactical because "there is simply no strategic advantage that can possibly be gained by failing to object" to the prosecutor's statements in this case. Lumpkin's opinion that the silence could not have been tactical because it did not support his theory of defense is not enough to satisfy the second prong of the fundamental standard analysis. Consequently, Lumpkin has not overcome the presumption that defense counsel's silence was strategic. Even if Lumpkin established the second prong, he has

5

not demonstrated that the error actually affected the outcome of the trial as required under the third prong of the analysis. *Miller*, 165 Idaho at 119-20, 443 P.3d at 133-34.

Although the improper statements occurred during the State's rebuttal argument, the timing of the statements does not mean that they actually impacted the trial's outcome or are outside the reach of a remedial instruction. *Saenz*, 167 Idaho at 453, 470 P.3d at 1260. Here, Lumpkin has not met his burden to show the prosecutor's statement referencing the jury instruction actually impacted the trial because the district court instructed the jury about what was, and was not, proper evidence for consideration. Misconduct may be remedied by an instruction from the district court informing the jury that the attorneys' comments are not evidence. *State v. Alwin*, 164 Idaho 160, 169, 426 P.3d 1260, 1269 (2018).

First, the district court instructed the jury to consider "only the evidence admitted in this trial," which "consists of the testimony of the witnesses, the exhibits offered and received, and any stipulated or admitted facts." The jury was instructed that arguments and statements made by the lawyers during closing arguments were not evidence. The district court specifically told the jury that it "must not conclude from the fact that an instruction has been given that the court is expressing any opinion as to the facts." Lumpkin does not argue the jury did not follow the instructions of the court. Instead, Lumpkin argues the prosecutor's statements referencing Jury Instruction 18 actually affected the trial's outcome because it eliminated one of the elements of the offense of possession of a controlled substance by telling the jury that the instruction proved the substance was methamphetamine. This Court is not persuaded.

During the trial, Lumpkin testified that he knew the pipe contained residue from smoking methamphetamine, albeit that the residue was "blow off" or "garbage" residue. Lumpkin admitted to willingly possessing the pipe and stated that at the time he was arrested, he intended to purchase methamphetamine. Officer Fisher testified that he selected a methamphetamine field test for the pipe because of the residue in the pipe, his training and experience, and Lumpkin's admission at the time of his arrest that the pipe was used to smoke methamphetamine. The State's forensic scientist testified the laboratory test she ran on the residue in the pipe tested positive for methamphetamine. Lumpkin's defense was that he did not believe or know the residue in the pipe was usable methamphetamine, but instead he characterized the residue as "blow off" or "garbage"--the residue remaining after methamphetamine had been smoked. Moreover, Lumpkin overstates the language of Jury Instruction 18. The instruction did not state

6

that the contents of the exhibit *did* contain methamphetamine, it only stated that the exhibit *may* contain a controlled substance. Given the language of Jury Instruction 18, the evidence, and Lumpkin's assertion that the prosecutor's comments eliminated the need for the State to prove the substance was methamphetamine, is unpersuasive. The testimony established beyond a reasonable doubt the substance was methamphetamine and the jury instructions properly required the jury to find all elements of the offense beyond a reasonable doubt. Accordingly, Lumpkin has not established fundamental error.

**B.** **Lumpkin Did Not Establish That the District Court Abused Its Discretion by Imposing a Unified Sentence of Five Years, With Two Years Determinate**

Lumpkin argues the district court abused its sentencing discretion and violated his rights to a jury trial, due process, and to maintain his innocence by imposing a sentence in excess of his requested sentence based on his decision to go to trial and his continued refusal to accept guilt. Specifically, Lumpkin asserts the court abused its discretion by failing to act consistently with applicable legal standards and within the confines of its discretion because it imposed the sentence and public defender reimbursement as punishment for Lumpkin's decision to go to trial. In response, the State argues the district court's sentence and order for public defender reimbursement were based on proper considerations and, therefore, Lumpkin is unable to show the district court abused its sentencing discretion.

A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation, or retribution applicable to a given case. *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). It is improper for a court to penalize a defendant for exercising his right to go to trial. *State v. Lawrence*, 112 Idaho 149, 157, 730 P.2d 1069, 1077 (Ct. App. 1986). On the other hand, a sentencing judge must consider the primary goals of sentencing, including rehabilitation, and many courts have held that an acknowledgement of guilt is a critical first step toward rehabilitation. *United States v. Hull*, 792 F.2d 941, 943 (9th Cir. 1986); *United States v. Floyd*, 496 F.2d 982, 989 (2d Cir. 1974); *Gollaher v. United States*, 419 F.2d 520, 530 (9th Cir. 1969).

Here, the district court noted Lumpkin's decision to maintain his innocence and go to trial when it imposed sentence. The reference the court made to Lumpkin's choice to proceed to

7

trial was immediately followed by its statement that "everyone has a right to go to trial," explicitly recognizing both the relevant law and the application of that law to the facts of Lumpkin's case. To show a violation of due process, a defendant must demonstrate the judge's vindictiveness or intent to punish him for exercising his rights. *Stedtfeld v. State*, 114 Idaho 273, 276, 755 P.2d 1311, 1314 (Ct. App. 1988). Aside from the district court's acknowledgement of Lumpkin's decision to go to trial, Lumpkin points to no evidence to suggest the court's imposition of sentence was impermissibly motivated. The district court ultimately determined that a unified five-year sentence, with two years determinate, would best serve the goals of sentencing based on Lumpkin's criminal history in Idaho and Washington. The court stated "anything less than some prison would not meet the goals of sentencing." The court properly considered Lumpkin's criminal history, his character and attitude throughout the proceedings, and his potential for rehabilitation when it imposed sentence. Additionally, the persistent violator enhancement required the district court to impose a minimum sentence of five years. I.C. § 19-2514. The imposed unified sentence of five years, with two years determinate, was within the statutory limit of five years to life. Thus, the sentence imposed was based on proper statutory considerations, not a desire to punish Lumpkin for proceeding to trial, and we cannot conclude the district court abused its discretion when it imposed Lumpkin's sentence.

## C. The District Court Abused Its Discretion by Ordering Public Defender Reimbursement

Lumpkin also argues the district court abused its discretion by imposing reimbursement for public defender services as punishment for his decision to go to trial. Reimbursement of costs for legal services provided by the county to a needy person is authorized under I.C. § 19-854(7), which provides:

> Upon conviction, notwithstanding the form of judgment or withheld judgment, plea of guilty or finding of guilt for any crime regardless of the original crime or number of counts, an indigent person who receives the services of an attorney provided by the county may be required by the court to reimburse the county for all or a portion of the cost of those services related to the conviction, plea of guilty or finding of guilt, unless the requirement would impose a manifest hardship on the indigent person. The current inability of the indigent person to pay the reimbursement shall not, in and of itself, restrict the court from ordering reimbursement.

The district court ordered Lumpkin to pay "$500 to Bonner County to repay some of the costs of the public defender in this case for what certainly I think was a strange decision to go to

trial yesterday." As stated above, it is improper for a court to penalize a defendant for exercising his right to go to trial. *Lawrence*, 112 Idaho at 157, 730 P.2d at 1077. Unlike the imposition of sentence, where the district provided multiple reasons for imposing the sentence and explicitly noted that Lumpkin had the right to go to trial, the district court provided one justification for its order of reimbursement: Lumpkin's "strange decision to go to trial" in light of the evidence of his guilt. The district court abused its discretion by ordering reimbursement because of Lumpkin's choice to proceed to trial. Consequently, the district court's order imposing $500 public defender reimbursement is vacated.

## IV.
## CONCLUSION

Lumpkin did not establish the prosecutor's statements during closing argument amounted to fundamental error. Further, Lumpkin has failed to show the district court abused its discretion in imposing a unified five-year sentence, with two years determinate. However, Lumpkin established the district court abused its discretion in awarding public defender reimbursement. Consequently, Lumpkin's judgment of conviction and sentence are affirmed and the order awarding $500 in public defender reimbursement is vacated.

Judge GRATTON and Judge LORELLO **CONCUR**.

9