## THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 46517

STATE OF IDAHO,                             )
                                            )
      **Plaintiff-Respondent,**     )
                                            )        Boise, February 2019
v.                                          )
                                            )
                                            )        Opinion Filed:  March 4, 2019
GREGG JAMES MILLER,                         )
                                            )
      **Defendant-Appellant.**      )        Karel A. Lehrman, Clerk
                                            )
                                            )

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County.  Hon. Steven Verby, District Judge.

District court judgment of conviction, <u>affirmed.</u>

Eric D. Frederickson, State Appellant Public Defender, Boise, for appellant. Maya P. Waldron, Deputy State Public Defender argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent.  Kenneth K. Jorgenson, Deputy Attorney General argued.

_____

BURDICK, Chief Justice.

In an appeal arising out of Kootenai County, Gregg James Miller challenged his convictions for injury to a child and felony eluding. As to the injury to a child conviction, Miller argued the jury instruction, combined with the prosecutor's closing argument, created a fatal variance with the information. Miller also argued the prosecutor committed prosecutorial misconduct during closing arguments by appealing to the emotions, passions, and prejudices of the jury, and by misstating the evidence. Miller appealed his judgment of conviction and sentence to the Court of Appeals, which affirmed. Miller timely filed a petition for review which this Court granted. We affirm the district court's judgment of conviction and clarify the fundamental error doctrine articulated in *State v. Perry*, 150 Idaho 209, 226, 245 P.3d 961, 978 (2010).

### I.    FACTUAL AND PROCEDURAL BACKGROUND

In April 2016, Miller's wife, Rochelle, called police after she and Miller had a verbal dispute that resulted in Miller driving off aggressively with the couple's minor son, S.A.M., in

1

the car. Officer Sanchez arrived at the Millers' home and was speaking with Rochelle when Miller drove near the house. Rochelle pointed out Miller's vehicle, and Officer Sanchez walked towards his patrol car, at which time Miller quickly reversed his vehicle and drove away. Officer Sanchez began to pursue Miller and activated his siren and overhead lights. Miller drove away quickly and Officer Sanchez estimated Miller was driving 40 miles-per-hour in a 15 miles-per-hour zone. Miller drove past a number of pedestrians near the roadway. Miller eventually stopped his vehicle in a field and S.A.M. exited the vehicle and ran to a nearby residence. Miller exited the vehicle and started walking away from Officer Sanchez. Miller was then ordered to the ground at gunpoint and arrested.

Miller was charged with felony eluding a police officer pursuant to Idaho Code section 49-1404(2) and misdemeanor injury to a child pursuant to Idaho Code section 18-1501(2). Miller's trial counsel did not object to the proposed jury instructions. A jury convicted Miller on both counts, and he was sentenced to a term of four years, one year fixed, for the eluding charge, and was given credit for time served for the injury to a child charge. Miller appealed to the Court of Appeals, alleging two instances of fundamental error. *State v. Miller*, No. 45028, 2018 WL 3413827, at *1 (Idaho Ct. App. July 13, 2018). First, he argued there was a fatal variance between the information and jury instructions, and second, he argued the prosecutor committed misconduct. *Id.* The Court of Appeals affirmed the conviction and sentence. *Id.* This Court granted Miller's petition for review.

## II.    ISSUES ON APPEAL

1. Whether the jury instructions, when combined with the prosecutor's statement in closing argument, constituted a fatal variance from the information.
2. Whether the prosecutor committed prosecutorial misconduct during closing arguments.

## III.    STANDARD OF REVIEW

"In cases that come before this Court on a petition for review of a Court of Appeals decision, this Court gives serious consideration to the views of the Court of Appeals, but directly reviews the decision of the lower court." *State v. Schall*, 157 Idaho 488, 491, 337 P.3d 647, 650 (2014) (quoting *State v. Oliver*, 144 Idaho 722, 724, 170 P.3d 387, 389 (2007)). "Where a defendant alleges that a constitutional error occurred at trial, we must first determine whether a contemporaneous objection was made." *State v. Bernal*, 164 Idaho 190, 193, 427 P.3d 1, 4 (2018) (quoting *State v. Hall*, 163 Idaho 744, 766, 419 P.3d 1042, 1064 (2018). "If the alleged error was not followed by a contemporaneous objection, it must be reviewed under the

2

fundamental error doctrine." *Id.* (citing *State v. Perry*, 150 Idaho 209, 228, 245 P.3d 961, 980 (2010)).

We have previously stated that in order to obtain relief under the fundamental error doctrine:

> (1) the defendant must demonstrate that one or more of the defendant's unwaived constitutional rights were violated; (2) the error must be clear or obvious, without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision; and (3) the defendant must demonstrate that the error affected the defendant's substantial rights, meaning (in most instances) that it must have affected the outcome of the trial proceedings.

*Perry*, 150 Idaho at 226, 245 P.3d at 978. However, based on the application of *Perry* in the years that have followed the decision, as well as oral arguments made by appellate counsel in this case, we wish to take this opportunity to clarify *Perry*.

First, we address the second prong of *Perry* that states "the error must be clear or obvious, without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision." *Id.* We reemphasize that in order to satisfy this prong of *Perry* a defendant bears the burden of showing clear error in the record. This means the record must contain evidence of the error and the record must also contain evidence as to whether or not trial counsel made a tactical decision in failing to object. If the record does not contain evidence regarding whether counsel's decision was strategic, the claim is factual in nature and thus more appropriately addressed via a petition for post-conviction relief. As the Court of Appeals observed, when stating the second prong of *Perry* is satisfied, appellant's counsel often contends "it is clear from the record that the failure to object was not tactical" and that "failing to object could not have benefitted the defendant." *Miller*, No. 45028, 2018 WL 3413827, at *4 n. 2. However, neither of those statements demonstrates that it is clear that the record contains evidence that the failure to object was a tactical decision. Thus, we clarify that whether trial counsel made a tactical decision in failing to object is a claim that must be supported by evidence in the record. Appellate counsel's opinion that the decision could not have been tactical does not satisfy the second prong of *Perry*.

Next, we clarify the third prong of *Perry* that states "the defendant must demonstrate that the error affected the defendant's substantial rights, meaning (in most instances) that it must have affected the outcome of the trial proceedings." *Perry*, 150 Idaho at 226, 245 P.3d at 978. In dicta

that followed the holding in *Perry*, this Court articulated that, as to the third prong, the defendant bears the burden of showing there is a "reasonable possibility" that the error affected the outcome of the trial. *Id.* In the years following *Perry*, we have cited both the "error affected the outcome" and the "reasonable possibility" language when discussing the third prong of *Perry*. *See e.g.*, *Bernal*, 164 Idaho at 193, 427 P.3d at 4. However, the "reasonable possibility" language has resulted in confusion among litigants as to what standard applies, with some parties arguing the standard should be the same "reasonable probability" standard applicable in ineffective assistance of counsel cases. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984); *Marr v. State*, 163 Idaho 33, 37, 408 P.3d 31, 35 (2017). We take this opportunity to clarify that the third prong of *Perry* requires that the defendant demonstrate that the clear error in the record—*i.e.,* the error identified in the first and second prongs—actually affected the outcome of the trial proceedings. Whether the error affected the trial proceedings must be clear from the appellate record and must not be speculative. In so requiring, we note that the words "reasonable possibility" are no longer appropriate or descriptive of the third prong of *Perry*. Showing clear error that affected the outcome of trial is a high standard for an appellant to satisfy and one that will not often be met.[1]

## IV.   ANALYSIS

### A.   Whether the jury instruction, in conjunction with a statement in the prosecutor's closing argument, constituted a fatal variance from the information.

"Jury instructions should match the allegations in the charging document as to the means by which a defendant is alleged to have committed the charged crime." *State v. Bernal*, 164 Idaho 190, 194, 427 P.3d 1, 5 (2018) (citing *State v. Hooper*, 145 Idaho 139, 146–47, 176 P.3d 911, 918–19 (2007). "Failure to do so creates a variance." *Id.* (citing *State v. Folk*, 151 Idaho 327, 342, 256 P.3d 735, 750 (2011). "A variance becomes fatal when it violates due process." *Id.*

> The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense.

*Id.* (quoting *Berger v. United States*, 295 U.S. 78, 82 (1935)).

---

[1] We note that nothing in our discussion of *Perry* affects the analysis applicable when an error occurred at trial that constituted a structural defect. *See Perry*, 150 Idaho at 222, 245 P.3d at 974.

As this Court recently stated, "[a]pplying this standard presents a two-step process." *Id.* (citing *State v. Gas*, 161 Idaho 588, 592, 388 P.3d 912, 916 (Ct. App. 2016)). "First, the appellate court determines whether there was a variance between the information used to charge the crime and the instruction presented to the jury." *Id.* (citation omitted). "Second, if a variance does exist, then the court examines whether it rises to the level of prejudicial error requiring reversal of the conviction, i.e., whether it is fatal." *Id.* (citation omitted). Even if there is a variance between the charging instrument and the jury instruction, reversal is only necessary when the variance "deprives the defendant of the right to fair notice or leaves him or her open to the risk of double jeopardy." *Id.* As to notice, this Court must determine whether the defendant was misled or surprised "in the preparation or presentation of his or her defense." *Id.* (citing *State v. Windsor*, 110 Idaho 410, 418, 716 P.2d 1182, 1190 (1985)).

Indeed, this Court has repeatedly held that even if there is a variance, it is not fatal if the defendant had notice of it or was not misled or surprised in preparation of his defense. *See State v. Johnson*, 145 Idaho 970, 977, 188 P.3d 912, 919 (2008) (holding a variance was not fatal because the defendant was "not misled or embarrassed in the preparation of her defense."); *Windsor*, 110 Idaho at 417–18, 716 P.2d at 1189–90 (no fatal variance when there was no evidence the defendant was either misled or surprised at trial); *Bernal*, 164 Idaho at 194, 427 P.3d at 6 (holding a variance was not fatal when the defendant had notice of it and put on a defense against it).

However, this Court found a fatal variance to exist "when a jury instruction permitted a jury to find the defendant guilty of crimes not charged in the information." *Bernal*, 164 Idaho at 194, 427 P.3d at 5 (citing *Folk*, 151 Idaho at 342, 256 P.3d at 750). In *Folk*, a defendant was charged with lewd conduct "by oral-to-genital contact" and the original jury instruction reflected this language. 151 Idaho at 339, 256 P.3d at 747. However, when the jury asked the court whether it could convict for lewd and lascivious conduct other than oral-genital contact, the court responded that lewd and lascivious conduct was the statutory name for a category of various sexual touching crimes. *Id.* at 340, 256 P.3d at 748. The court then defined lewd and lascivious conduct to contain various instances of inappropriate touching and used the phrase "etc" at the end. *Id.* In determining a fatal variance existed, this Court stated "the court's inclusion of 'etc.' following the list of prohibited conduct reinforced that the jury could find Defendant guilty of conduct other than oral-genital contact." *Id.* Because certain types of touching were not included

5

in the lewd and lascivious statute, the use of "etc" allowed the jury to find the defendant guilty of conduct that did not constitute lewd conduct, the crime with which he was charged. *Id.* at 342, 256 P.3d at 750.

In this case, Miller argues there was a fatal variance between the information and Jury Instruction No. 21 that, when combined with the prosecutor's closing argument, amounted to fundamental error. As to the injury to a child charge, the information stated Miller committed the offense when Miller "willfully caused or permitted the child to be placed in a situation that its person or health may be endangered . . . by driving an automobile, with the child as a passenger, in an aggressive or reckless manner and while eluding law enforcement . . . ." Jury Instruction No. 21 stated:

> In order for the Defendant to be guilty of Injury to a Child, the state must prove
> each of the following:
>
> 1. On or about April 16, 2016;
> 2. In the State of Idaho;
> 3. The Defendant Gregg James Miller;
> 4. Had the care or custody of S.A.M.;
> 5. Who was a child under 18 years of age, and;
> 6. The Defendant wilfully [sic] caused or permitted the child to be placed
> in a situation that may have endangered the child's person or health. If any of the
> above has not been proven beyond a reasonable doubt, you must find the
> Defendant not guilty. If each of the above has been proven beyond a reasonable
> doubt, then you must find the Defendant guilty.

Defense counsel did not object to these instructions.

Miller contends that the information alleged Miller committed injury to a child by "*driving an automobile*, with a child as a passenger, in an aggressive or reckless manner while eluding law enforcement" whereas Jury Instruction No. 21 did not mention an automobile and instead stated Miller was guilty of the crime if he willfully caused the child to be "*placed in a situation* that may have endangered the child's person . . . ." Miller states this variance was fatal when combined with the prosecutor's statement at closing that said:

> Not only in his driving here did he endanger this child. When he stopped
> in that field and let that child run out of there knowing that the police were right
> there, right there behind him, you remember Officer Sanchez pulls his gun,
> anything could have happened. So this was definitely a dangerous situation that
> he placed his child right smack in the middle of.

Miller contends that the prosecutor's closing statement, combined with the jury instruction, created a new "means of committing" the injury to a child offense whereby the jury could

convict Miller for creating a situation in which the officer drew his gun in S.A.M.'s presence. For the reasons discussed below, there was not a fatal variance.

In *Bernal*, this Court stated variances are not fatal when the defendant is on notice of the variant theory or if the defendant was not misled or surprised in preparation of his defense. 164 Idaho at 195, 427 P.3d at 6. This includes when a defendant responds to witness testimony about the alleged variance. *Id.* Here, Miller was on notice that the State may address S.A.M. running off after the car stopped. There is nothing in the information that indicated the State's arguments about the injury to a child charge would be limited to events that occurred while the automobile was still moving. Instead, the discussion of S.A.M. running from the car after it stopped in the field is directly related to Miller's act that "willfully caused or permitted the child to be placed in a situation that its person or health may be endangered . . . by driving an automobile, with the child as a passenger, in an aggressive or reckless manner and while eluding law enforcement . . . ." This is unlike *Folk*, where the variance permitted the defendant to be convicted based on acts that were not covered by the charging statute, because here, nothing was alleged that would have allowed Miller to be convicted based on acts outside the injury to a child statute. Additionally, the jury was instructed that the attorneys' arguments and statements were not evidence the jury could consider, and this Court presumes the jury followed the court's jury instructions. *Weinstein v. Prudential Prop. & Cas. Ins. Co.*, 149 Idaho 299, 335, 233 P.3d 1221, 1257 (2010).

Moreover, Miller's counsel "responded to witness testimony" about S.A.M. running from the car after it stopped in the field. *See Bernal*, 164 Idaho at 195, 427 P.3d at 6. Though Miller contends his defense counsel did not explore the allegation in the prosecutor's closing statement, the record shows that trial counsel rebutted the theory in closing. Miller's counsel, in fact, put on a defense about the situation that occurred after Miller stopped the car during closing argument, stating:

> [T]his whole thing took like a minute if you watch the video. He knows he's going to be at his friend's house, you know, in like the next 20 seconds. Does he prefer to, you know, yank over right there, is that somehow safer for his kid if he immediately stops? Or if he gets there, give the kid a chance to run off. The reality is he did pretty much all of this not for selfish reasons, but he wanted to make sure his kid didn't wind up having to go with his mom who was incredibly mad at him and because he didn't want to have his kid watching him possibly being arrested and being accused of who knows what it was he was being accused of. So it's a little -- kind of goes against the whole point of all this to say what this was about was permitting his child willfully to be placed in a dangerous situation.

This is similar to *Bernal*, where this Court held a variance was not fatal because the defendant had notice of, and responded to, witness testimony relating to the alleged variant theory. *Id.* Therefore, there was not a fatal variance because Miller was not misled or surprised "in the preparation or presentation of his . . . defense." *Id.* at 194, 427 P.3d at 5 (citing *Windsor*, 110 Idaho at 418, 716 P.2d at 1190). Because the variance, if any, was not fatal, Miller cannot establish that his due process rights were violated so as to satisfy the first prong of *Perry*—the violation of an unwaived constitutional right. 150 Idaho at 228, 245 P.3d at 980. Because Miller has failed to satisfy the first prong of *Perry*, it obviates the need to address the remaining two prongs, as Miller is unable to show fundamental error.

**B.      Whether the prosecutor committed prosecutorial misconduct during closing argument.**

Miller argues the prosecutor committed misconduct during closing argument that amounted to fundamental error by appealing to the emotions, passions, and prejudices of the jury, and by misstating the evidence. Miller takes issue with three statements by the prosecutor, each of which will be discussed in turn below.

"Where prosecutorial misconduct was not objected to during trial, this Court may only reverse when the misconduct constitutes fundamental error." *State v. Alwin*, 164 Idaho 160, 169, 426 P.3d 1260, 1269 (2018) (quoting *State v. Lankford*, 162 Idaho 477, 494, 399 P.3d 804, 821 (2017)). The first step in a prosecutorial misconduct analysis "is to determine whether the alleged conduct actually rises to the level of prosecutorial misconduct." *Lankford*, 162 Idaho at 494, 399 P.3d at 821. This Court has said, "[p]rosecutorial misconduct occurs when the State 'attempts to secure a verdict on any factor other than the law as set forth in the jury instructions and the evidence admitted at trial, including reasonable inferences that may be drawn from that evidence.'" *Bernal*, 164 Idaho at 196, 427 P.3d at 7 (quoting *State v. Abdullah*, 158 Idaho 386, 440, 348 P.3d 1, 55 (2015)). "[T]he prosecutor has a duty to avoid misrepresentation of the facts and unnecessarily inflammatory tactics." *Id.* (quoting *State v. Moses*, 156 Idaho 855, 871, 332 P.3d 767, 783 (2014)).

However, "[t]here is considerable latitude in closing argument, and both sides are entitled to discuss fully, from their respective standpoints, the evidence and the inferences that should be drawn from it." *Alwin*, 164 Idaho at 169, 426 P.3d at 1269 (citation and quotation marks omitted). "Whether comments during closing arguments rise to the level of fundamental error is a question that must be analyzed in the context of the trial as a whole." *Id.* (quoting *Lankford*,

162 Idaho at 497, 399 P.3d at 824). "Unobjected-to prosecutorial misconduct that arises in closing argument must be so egregious that the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Lankford*, 162 Idaho at 497, 399 P.3d at 824). This Court has said misconduct can be remedied when the district court gives an instruction "informing the jury that the attorneys' comments are not evidence." *Id.* Moreover, "in reviewing allegations of prosecutorial misconduct the Court must keep in mind the realities of trial. A fair trial is not necessarily a perfect trial." *Lankford*, 162 Idaho at 494, 399 P.3d at 821 (quoting S*tate v. Ellington*, 151 Idaho 53, 62, 253 P.3d 727, 736 (2011).

Inflammatory comments are comments which are "calculated to inflame the minds of jurors and arouse passion or prejudice against the defendant, or [are] so inflammatory that the jurors may be influenced to determine guilt on factors outside the evidence." *State v. Sheahan*, 139 Idaho 267, 280, 77 P.3d 956, 969 (2003) (quoting *State v. Babb*, 125 Idaho 934, 942, 877 P.2d 905, 913 (1994)). For example, this Court held that a "prosecutor's comments during closing argument that defense counsel had misled and lied to the jury" were misconduct because "the comments were intended to inflame the minds of jurors and arouse passion or prejudice against the defendant based upon asserted misconduct of defense counsel." *Sheahan*, 139 Idaho at 281, 77 P.3d at 970. However, in that case, the comments did not rise to fundamental error. *Id.* Similarly, this Court has held that a "prosecutor's statements that [the victim] was speaking from her grave were somewhat inflammatory because they were likely designed to appeal to the sympathies and passions of the jury." *State v. Severson*, 147 Idaho 694, 719, 215 P.3d 414, 439 (2009). There, the prosecutor stated, "[the victim] still speaks to us today. She is still telling us what happened that night and why she is dead. . . . [She] tells us, she speaks to us from her grave as to who killed her and why she died." *Id.* However, though inflammatory, the comments did not rise to fundamental error because they did not result in an unfair trial or deprive the defendant of due process. *Id.*

1. The prosecutor's statements about the bicyclist.

Miller first challenges the prosecutor's statement in closing argument which told the jury "if [the bicyclist] had just taken a few more strides on his bike, he might not have been here for you today to testify for you." Miller contends this statement was inflammatory and sought to appeal to the passions and prejudices of the jury by suggesting Miller almost killed the bicyclist.

9

Miller also argues the statement misstated the evidence because the bicyclist was approaching a stop sign and would have been legally required to yield to cross-traffic. Miller's argument is unavailing.

The prosecutor's statement was a reasonable inference from the evidence and within the considerable latitude afforded to prosecutors during closing argument. *See Alwin*, 164 Idaho at 169, 426 P.3d at 1269. The prosecutor's statement was supported by the evidence. The bicyclist testified at trial that he was riding up a street and "approaching a stop sign" when his friend "screamed at [him]." He then stated he "saw the car fly by" and estimated the car was the distance from him to the corner of the desk he was testifying from. When asked, "[w]hat was your reaction when the car flew by at that distance?" the bicyclist responded he was "shook up," "petrified," "nervous" and "really stiff." He then testified he watched the car cross the highway "without stopping, no brake lights, no nothing." Based on this testimony, the prosecutor's statements about the bicyclist were based on the evidence and were not a misstatement of the evidence. Compared with the statements in *Sheahan* and *Severson*, which attacked defense counsel's credibility and stated the victim was speaking from the grave, here, the prosecutor's statements highlighted the danger to the bicyclist when Miller sped past him, a conclusion supported by witness testimony.

Additionally, even if the prosecutor committed misconduct, Miller cannot show fundamental error because the error is not clear or obvious from the record. *See Perry*, 150 Idaho at 226, 245 P.3d at 979. The jury was instructed that the attorneys' arguments and statements were not evidence the jury could consider, and this Court presumes the jury followed the court's jury instructions. *Weinstein*, 149 Idaho at 335, 233 P.3d at 1257. Nor is it clear from the record that the failure to object was not a tactical decision. *See Perry*, 150 Idaho at 228, 245 P.3d at 980. Miller's counsel rebutted the prosecutor's statements in closing argument, stating:

> So the officer is here and [Miller]'s there and [Miller] passes those two [bicyclists] at that point. Now, the boys presumably know better than to ride into a road without stopping and looking both ways, so despite what the prosecution is telling you, assuming that [Miller] is going somewhere between 30 and 40 miles an hour, he's probably not about to suddenly spin out and hit a bunch of people that are standing on the sidewalk, and I don't think there's any particular reason to hold against him the fact that people tend to be outside in the middle of the day.

Accordingly, the prosecutor did not commit misconduct, but even if they did, Miller has not shown fundamental error.

2.    The prosecutor's statement about the proximity to pedestrians.

Miller next alleges the prosecutor committed misconduct by stating during closing argument:

> Do you recall the testimony yesterday, I believe that Officer Sanchez estimated about the car came within about 5 feet of this group of elderly persons that were standing outside the church on the roadway. About 10 feet from a group of children when he turned up on to 3rd Street from Jefferson. Those also were near hits.

Miller contends that this statement was inflammatory by appealing to the emotions and prejudices of the jury. Miller also argues this was a misstatement of evidence because Officer Sanchez testified that the group of elderly people was 3 to 5 feet *from* the roadway, not *on* the roadway. Miller also contends that Officer Sanchez was testifying as to where the people were when the Officer passed them, but did not see where they were when Miller passed them. Miller argues that there was no evidence he drove off the road, and thus there were not "near hits" as the prosecutor alleged.

Here again, the prosecutor's statement was a reasonable inference from the evidence and within the considerable latitude afforded to prosecutors during closing argument. *See Alwin*, 164 Idaho at 169, 426 P.3d at 1269. Officer Sanchez testified that there was a group of elderly persons outside a church that were "3 to 5 feet from the roadway also watching as we went by. I know some of them were particularly close to the road." Officer Sanchez also testified that he saw a "group of kids" within "3 to 5 feet from the edge of the roadway." Officer Sanchez testified he could not see where the children were when Miller was approaching them, but they were 3 to 5 feet from the roadway when the Officer went by and they were watching the cars pass. Officer Sanchez also stated he saw a "group of kids on tricycles or Big Wheels playing right in the middle of the road" that "were within 10 feet from the southernmost curb line of Jefferson Road." Officer Sanchez also testified that Miller's driving occasionally kicked up dust, which the officer took to mean that Miller was driving too close to the edge of the road. Based on the testimony, the prosecutor's statement was a reasonable inference of the evidence. While Officer Sanchez stated the elderly were near, rather than on, the road, he also testified that "some of them were particularly close to the road" and that Miller was driving close enough to the road to kick up dust. Accordingly, it was not a mischaracterization of evidence to call Miller's coming within 5 feet of pedestrians as "near hits."

11

And, here again, even if the prosecutor committed misconduct, Miller cannot show fundamental error. *See Perry*, 150 Idaho at 228, 245 P.3d at 980. As discussed previously regarding the bicyclist, Miller's counsel rebutted the prosecutor's statements regarding the sidewalk pedestrians in closing argument. Therefore, it is not clear from the record that the failure to object was not a tactical decision. *See id*. Accordingly, the prosecutor did not commit misconduct, but even if they did, Miller has not shown fundamental error.

   3. The prosecutor's statements about S.A.M.'s presence when Officer Sanchez apprehended Miller at gun point.

Lastly, Miller contends the prosecutor committed misconduct during closing argument when it stated:

> Not only in his driving here did he endanger this child. When he stopped in that field and let that child run out of there knowing that the police were right there, right there behind him, you remember Officer Sanchez pulls his gun, anything could have happened. So this was definitely a dangerous situation that he placed his child right smack in the middle of.

This is the same statement challenged above in the fatal variance analysis. Miller contends it was prosecutorial misconduct because the evidence shows S.A.M. had already run off by the time Officer Sanchez got out of his car and drew his gun. Officer Sanchez testified that when he approached Miller's car that had stopped in the field Officer Sanchez "saw the young child run off." Officer Sanchez also said, "first the child ran out the passenger side, and as I'm still pulling up the driver gets out slowly . . . ." The body-camera footage does not show the child in the frame of the camera during Miller's arrest.

Officer Sanchez's testimony and the body camera footage show that S.A.M. was not present at the time the gun was drawn and Miller was arrested. However, Officer Sanchez's testimony that he "saw the young child run off" indicates that S.A.M. was still at the scene when Officer Sanchez arrived in his patrol car, but that S.A.M. ran off before Officer Sanchez exited the car and drew his gun. Thus, the statement by the prosecutor that Miller "stopped in that field and let that child run out of there knowing that the police were right there, right there behind him . . . ." is supported by the evidence. However, the prosecutor's next statement "you remember Officer Sanchez pulls his gun, anything could have happened" is not supported by the testimony or body-camera footage because S.A.M. was gone when the gun was drawn. Therefore, that portion of the prosecutor's statement is a mischaracterization of the evidence and prosecutorial misconduct. *See Bernal*, 164 Idaho at 197, 427 P.3d at 7 ("[P]rosecutorial misconduct occurs

12

when the State 'attempts to secure a verdict on any factor other than the law as set forth in the jury instructions and the evidence admitted at trial, including reasonable inferences that may be drawn from that evidence.'") (citation omitted).

Because the prosecutor's statement constituted misconduct, we "must determine whether the misconduct rose to the level of fundamental error." *Alwin*, 164 Idaho at 172, 426 P.3d at 1272 (citing *Perry*, 150 Idaho at 226, 245 P.3d at 978). "Prosecutorial misconduct during closing arguments will constitute fundamental error only if the comments were so egregious or inflammatory that any consequent prejudice could not have been remedied by a ruling from the trial court informing the jury that the comments should be disregarded." *Id.* (quoting *Lankford*, 162 Idaho at 501, 399 P.3d at 828). This Court has previously held that prosecutorial misconduct does not rise to the level of fundamental error when an instruction is given to the jury indicating that statements made by the attorneys during closing argument are not evidence. *See id.* at 173, 426 P.3d at 1273 ("[T]he misconduct does not amount to fundamental error because a jury instruction was provided that remedied any prejudice."); *Lankford*, 162 Idaho at 501, 399 P.3d at 828 ("[E]ven if these statements were prosecutorial misconduct, they did not rise to the level of fundamental error. . . . the court explicitly informed the jury that comments during closing statements were not to be considered as evidence.").

In this case, the jury was instructed that what the lawyers say in closing arguments is not evidence. As noted, this Court presumes the jury followed the court's jury instructions. *Weinstein*, 149 Idaho at 335, 233 P.3d at 1257. Additionally, the statement by the prosecutor was not "so egregious and inflammatory that the jury instruction would not remedy any consequential prejudice." *Alwin*, 164 Idaho at 173, 426 P.3d at 1273. This is especially true given that Miller's counsel rebutted the prosecutor's statement in his closing argument. Moreover, because Miller's counsel rebutted the statement, Miller has not shown that the failure to object was not a tactical decision by trial counsel. *Perry*, 150 Idaho at 226, 245 P.3d at 978. Accordingly, the misconduct does not rise to fundamental error.

## V.    CONCLUSION

In sum, there was no fatal variance between the information and the jury instruction. Next, the prosecutor's statements about the bicyclist and the pedestrians did not amount to prosecutorial misconduct. Lastly, while the prosecutor's statement about S.A.M.'s presence at

13

the arrest was prosecutorial misconduct, it did not amount to fundamental error. Therefore, Miller's conviction and sentence are affirmed.

Justices BRODY, BEVAN, STEGNER and MOELLER, **CONCUR.**