**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 46550**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: March 30, 2020** |
| Plaintiff-Respondent, | ) |
| | ) **Karel A. Lehrman, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| DONALD NELSON BARGER, JR., | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Franklin County. Hon. Mitchell W. Brown, District Judge.

Judgment of conviction for possession of a controlled substance, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Andrea W. Reynolds, Deputy Appellate Public Defender, Boise, for appellant. R. Jonathan Shirts argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

---

LORELLO, Judge

Donald Nelson Barger, Jr., appeals from his judgment of conviction for possession of a controlled substance. Barger challenges the district court's failure to sua sponte order a mental competency evaluation and the denial of his motion to dismiss. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Barger was stopped and arrested for driving without privileges after an officer, who knew Barger lacked a valid license, observed him driving on public roads. A subsequent inventory search of Barger's vehicle uncovered two hydrocodone pills. The State charged Barger with possession of a controlled substance and a persistent violator enhancement. During the proceedings below, Barger challenged the district court's jurisdiction. Barger argued that he was

1

being charged "as a man and not as a man" and that the charging documents were not signed by his "accuser." Although Barger had received a copy of the information and his counsel had attempted to explain the document's legal significance, Barger refused to recognize the document's validity as it was signed by the prosecuting attorney, not the arresting officer. The district court construed Barger's arguments as a pro se oral motion to dismiss, which was denied on the record. Barger then became defiant and disruptive in reasserting his jurisdictional challenges, resulting in him being held in contempt and removed from the courtroom. After a short cooling-off period, Barger was returned to the courtroom, at which time he apologized. Barger later pled guilty to possession of a controlled substance, I.C. § 37-2732(c)(1), reserving the right to appeal prior adverse rulings by the district court.[1] Barger appeals.

## II.

## ANALYSIS

Barger raises two claims of error on appeal: (1) that the district court erred in not sua sponte ordering a mental competency evaluation under I.C. § 18-211 and (2) that the district court erred by denying his pro se oral motion to dismiss. We hold that Barger has failed to show the district court erred in either regard.

### A. Mental Competency

Barger argues that the district court committed fundamental error[2] by failing to sua sponte order a mental competency evaluation under I.C. § 18-211. Barger contends that his unusual pro se legal views regarding jurisdiction, his obstreperous behavior, his statements to the presentence investigator and to the district court at sentencing, and some of counsel's comments about Barger should have raised a good-faith doubt as to Barger's mental competence, obliging the district court to order a mental competency evaluation on its own initiative. The State responds

---

[1] Barger's plea agreement resolved his felony charge in this case as well as several misdemeanor charges, which the State agreed to dismiss. The State also agreed to recommend probation.

[2] In order to obtain relief under the fundamental error doctrine, the defendant must demonstrate: (1) violation of an unwaived constitutional right; (2) the error is clear and obvious; and (3) the error actually affected the outcome of the trial. *State v. Miller*, 165 Idaho 115, 119-20 443 P.3d 129, 133-34 (2019).

that Barger waived this claim of error by pleading guilty[3] and that the claim otherwise fails on the merits. The State, however, acknowledged that Barger's guilty plea would waive his competency claim only if Barger was competent when he pled guilty. Because the State's waiver argument is intertwined with the core of Barger's competency argument, we first address the validity of Barger's guilty plea within the constitutional framework for competency.

The United States Supreme Court has held that conviction of a defendant while he or she is legally incompetent violates due process and that state procedures must be adequate to protect this right. *Pate v. Robinson*, 383 U.S. 375, 378 (1966). Idaho Code Section 18-211 protects this right and provides that, whenever there is reason to doubt a defendant's fitness to proceed, the court shall appoint a qualified expert to examine the defendant and determine the defendant's competency. I.C. § 18-211(1). The test to determine if a criminal defendant is competent to stand trial is whether the defendant has a rational, as well as factual, understanding of the proceedings against the defendant and whether he or she has sufficient present ability to consult with his or her lawyer with a reasonable degree of rational understanding to assist in preparing his or her defense. *Dusky v. United States*, 362 U.S. 402, 402 (1960); *State v. Hawkins*, 148 Idaho 774, 778, 229 P.3d 379, 383 (Ct. App. 2009). The standard for competence to plead guilty is the same. *Godinez v. Moran*, 509 U.S. 389, 401-02 (1993)

Because the constitutional right at issue protects against conviction while incompetent, Barger must have been competent when he pled guilty and when he was sentenced. *See State v. Green*, 130 Idaho 503, 504, 943 P.2d 929, 930 (1997) (noting that Idaho law provides that no person who lacks capacity to understand the proceedings or to assist in his or her own defense, due to mental disease, shall be tried, convicted, sentenced or punished for the commission of any crime during the period of such incapacity). Barger does not dispute that nothing in the transcript of the hearing at which he pled guilty indicates he was incompetent at that time. At that hearing, the district court engaged in a detailed plea colloquy, ascertaining whether Barger understood his rights and the consequences of pleading guilty. During the colloquy, Barger confirmed that he had never been treated for mental illness, that there was nothing about his mental condition that he

---

[3] A valid guilty plea waives all nonjurisdictional defects and defenses, whether constitutional or statutory, in prior proceedings. *State v. Schmierer*, 159 Idaho 768, 770, 367 P.3d 163, 165 (2016).

believed would impact his ability to understand the proceedings, that he possessed the controlled substance as charged in the information, that he understood the maximum penalties for the offense, that he had consulted with counsel regarding potential defenses, and that he wished to plead guilty. Following that colloquy, the district court expressly found that Barger's conditional guilty plea was knowing, voluntary, and intelligent. The guilty plea questionnaire Barger completed also supported a conclusion that Barger was competent when he pled guilty as did the district court's finding that Barger's guilty plea was knowing, voluntary, and intelligent. As with his plea colloquy, Barger's guilty plea questionnaire reflected his acknowledgment of his rights and the consequences of pleading guilty. Where appropriate, Barger also noted and initialed items on the questionnaire that were not applicable to his case as well as the conditional nature of his guilty plea. The hearing immediately preceding Barger's guilty plea also evidenced Barger's desire to enter a conditional guilty plea and his understanding of the nature of the proceedings. In short, nothing in the taking of Barger's guilty plea would have led the district court to entertain a good-faith doubt as to Barger's capacity to understand the nature and consequences of his plea. *See State v. Hayes*, 138 Idaho 761, 764, 69 P.3d 181, 184 (Ct. App. 2003) (holding that, because defendant did not present any evidence that would give rise to a good-faith doubt as to competence, the absence of a competency hearing did not constitute fundamental error).

Despite the foregoing evidence of competence at the time of his guilty plea, Barger contends there is evidence in the record both before and after his guilty plea that suggests he *might* have been incompetent and that this evidence required the district court to sua sponte order a competency evaluation at some point prior to entering judgment. A trial judge must conduct a competency hearing, regardless of whether one is requested, whenever the evidence before the judge raises a bona fide doubt about the defendant's competence to stand trial. *Hawkins*, 148 Idaho at 778, 229 P.3d at 383. A bona fide doubt exists if there is substantial evidence of incompetence. Although no particular facts signal a defendant's incompetence, suggestive evidence includes the defendant's demeanor before the trial judge, irrational behavior of the defendant, and available medical evaluations of the defendant's competence to stand trial. *Id.* We reject Barger's assertion

4

that the record shows the district court should have entertained a bona fide or good-faith doubt about Barger's competence such that an evaluation was required. Thus, he is not entitled to relief.[4]

Barger primarily relies on his pro se views regarding jurisdiction to support his claim that he might have been incompetent. Barger also cites his obstreperous behavior that led to a contempt finding, some of his statements to the presentence investigator and to the court at sentencing, and some of counsel's comments about his relationship with Barger as further evidence of incompetence.[5] We conclude that none of this information raised a bona fide doubt that Barger did not have a rational as well as factual understanding of the proceedings against him or a sufficient ability to consult with his lawyer with a reasonable degree of rational understanding to assist in preparing his defense.

The record reveals that Barger understood the charge against him as evidenced by his frequent insistence that he had a prescription for the hydrocodone that he was charged with unlawfully possessing and his belief that such a prescription, even if expired, should absolve him of criminal wrongdoing. Barger's unusual beliefs regarding what was required to confer jurisdiction[6] do not mean he did not understand the charge against him. Barger's jurisdictional beliefs also did not prevent him from having sufficient ability to consult with his lawyer in preparing his defense or in discussing actual defenses to the charged offense. Indeed, the record

---

[4]     Because the result is the same whether we conclude that Barger waived his issue as a result of his valid guilty plea or that he cannot show a constitutional violation under the fundamental error standard, we need not resolve any dispute over which standard to apply in this case.

[5]     Barger also notes that the GAIN evaluation and mental health examination report indicated he "may" benefit from a formal mental health evaluation. However, the evaluator did not express any concerns regarding competence, identify any mental illness, or recommend any mental health treatment. Moreover, Barger cites no authority for the proposition that the existence of a mental illness equates to incompetence. *See State v. Powers*, 96 Idaho 833, 842-43, 537 P.2d 1369, 1378-79 (1975) (explaining that the competency standard must be taken to mean no more than that the defendant is able to confer coherently with counsel and have some appreciation of the significance of the proceeding and his involvement in it; defendants who have some intellectual or physical handicap or emotional disturbance preventing them from functioning at their normal level of effectiveness can still meet such a standard).

[6]     The record indicates that Barger believed there were seven elements necessary to establish jurisdiction. Although Barger indicated at one point that he intended to file a list of those elements with the district court, that list does not appear in the record.

shows that Barger had the ability to consult with his lawyer on issues related to bond, the resolution of his case by a conditional guilty plea preserving the right to pursue his jurisdictional claims on appeal, his desire to be available to participate in his appeal, and his interest in considering whether to move to withdraw his guilty plea upon learning that the presentence investigator recommended retained jurisdiction rather than probation.

The obstreperous behavior Barger cites was directly connected to his belief that the district court lacked jurisdiction. The district court held Barger in contempt because he continued to interrupt the district court, insisting on challenging the district court's jurisdiction during a disposition hearing to determine the sanction for Barger's violation of the conditions of his pretrial release. Barger's insistence that he had a valid jurisdictional argument did not rise to the level of irrational behavior and was not substantial evidence of incompetence. Moreover, Barger's isolated episode of obstreperous behavior does not cast doubt on his mental acumen. Upon returning to the courtroom shortly after the episode, Barger recognized that his behavior was inappropriate and apologized to the district court. Moreover, Barger's exemplary behavior during other proceedings, which the district court recognized, belies any contention that Barger was incapable of controlling his behavior.

Barger's reliance on comments he made at or in relation to sentencing also does not demonstrate a bona fide doubt about his legal competence to plead guilty or be sentenced. The particular sentencing-related comments Barger cites include him telling the presentence investigator that he is a "traveler" and a "genius," even though he is unemployed and claimed he is homeless; the prophet has shown him the meaning of life; he was not allowed to say what is important to him; and his stated goals in life (at least when asked by the presentence investigator) were to "[b]attle gravity, entropy, and evil." In addition, Barger points to his comments he made at sentencing during his allocution in which he stated that he did not "know what to do" and he had "many, many hours of questions," and said:

> I don't understand what is going on. I supposedly have a right to understand.
> The first line here is a mistake, a question of jurisdiction. It has a trade name here instead of my true name that the court is supposed to be acting on for me as a man. Yet it has my trade name as a corporation or trust. So without dealing with issues like that, I don't know where to proceed.

In response, the district court advised Barger that he had five minutes to proceed however he wished and that he might want to consult with counsel and "focus on areas that will be most germane" to sentencing. Barger then said:

> Well, in an attempt to reserve my rights on these issues of facts, I'd like to ask the court to consider what is really going on here. I had an old dose of my pills in the back of the car that they didn't even find. The label on the pill bottle said to take one tablet by mouth three times a day as needed for pain. That's completely supposed to be my discretion on when I take them.
>
> The doctors say that it would be foolish to carry the pill bottle around, just take two or three that you need for emergencies. It seems funny to me and ironic that I'm being accused of being not a drug addict and not a drug dealer and not all these other things, I'm accused of having a perfect scenario for using hydrocodone.
>
> I had a dozen vitamins for my extra dose of vitamins so if I take a couple of hydrocodone pills when I'm in intense pain it won't be near so poison. I thought that would have been the ideal situation for doing the drugs.
>
> The hydrocodone, the downers, are not an issue for me. That's never been a problem. I thought the problem with me hav[ing] the prescription, which I have, the bottle is still good the pills are still there. *In fact, as far as the probation, where we have the victim here now and I've agreed to accept the charges pending certification, all we really need is for Karen to state that I harmed her and state the amount of damages and then I have already agreed to be bound by that.*
>
> I don't think that the court has jurisdiction to go beyond and say that even though there wasn't a crime, no evidence of a crime, we can still convict you because I had pills.
>
> I really dread the thought of going to prison and not being able to deal with it, because I won't be able to exercise what I need. I'm down to almost nothing. I very seldom take the full round of dose even. I take half of a meloxicam, half of a tizandine and maybe one tramadol. If it's going to be a wild and crazy day, or if I work too hard the day before, I might take one or two of the hydrocodone.
>
> So I'm asking you to consider that that is not the crime it's portrayed to be and to give me a minimal sentence and give me probation.

(Emphasis added.)

On appeal, Barger only cites the italicized language, characterizes those comments and the other sentencing-related comments set forth above as "bizarre," and asserts they warranted a competency evaluation before sentence was imposed. We disagree. Neither Barger's statements to the presentence investigator nor his comments at sentencing, when considered in context, demonstrate that he did not understand the proceedings or was unable to assist in his defense. The comments Barger made before the district court directed him to consult with counsel related to his disagreement with how the presentence report was written, which is unrelated to the criteria for

competence. Further, Barger's *full* allocution shows that he was aware of the proceedings and had the ability to assist counsel in his defense. The sentencing comments Barger highlights on appeal, in addition to being offered without context, only reiterate his position on jurisdiction. Throughout the proceedings, Barger asserted that, in his view, jurisdiction required a victim and that there was no victim relative to his possession charge.[7] Again, Barger's view of jurisdiction, while legally unsupported, is not substantial evidence that Barger did not understand the proceedings, could not assist counsel, or was not competent when he pled guilty and was sentenced. *See United States v. Neal*, 776 F.3d 645, 657 (9th Cir. 2015) (holding that a defendant's numerous comments disputing jurisdiction and other nonsensical issues such as calling the United States a corporation combined with his espoused sovereign citizen belief system did not show mental incompetency); *United States v. James*, 328 F.3d 953, 954-56 (7th Cir. 2003) (holding that a disruptive defendant's fringe legal beliefs did not warrant a competency hearing).

Finally, Barger relies on certain comments made by counsel during the course of the proceedings. Specifically, Barger notes that, at various times, counsel indicated he was having difficulty communicating with Barger due to his views on jurisdiction and that, at one of the hearings regarding Barger's violation of the conditions of pretrial release, counsel said Barger was "struggling with a whole bunch of issues" and was "not quite understanding the process." Although counsel did not expound on what those issues were, with respect to Barger's understanding of the process, counsel also explained: "It's coming to him slowly." Importantly, prior to that hearing, when counsel was asked whether Barger was able to assist in his own defense, counsel answered, "Yes." Counsel's opinion is entitled to great weight as defense counsel is in the best position to evaluate a client's comprehension of the proceedings. *See Dunlap v. State*, 141 Idaho 50, 59, 106 P.3d 376, 385 (2004); *cf. State v. Al-Kotrani*, 141 Idaho 66, 69-70, 106 P.3d 392, 395-96 (2005) (rejecting defendant's claim than an allegedly incompetent defendant should not be held to have waived any rights by entering an unconditional guilty plea in part because of strong presumption that counsel's performance was within wide range of reasonable professional

---

[7] Barger referred to Karen in his sentencing comments because she was the arresting officer and, in Barger's view of jurisdiction, she was required to have suffered an injury in order for the State to proceed. Barger asserted this same argument at his first appearance.

assistance). This is especially true where, as here, the district court was aware that counsel represented Barger on previous occasions. Consistent with counsel's early opinion that Barger was competent, counsel made additional statements to the district court indicating Barger was competent. For example, during the hearing at which the district court was informed the parties reached a plea agreement, counsel advised the district court that he met with Barger on several occasions, discussed the conditional guilty plea option, and Barger wanted to proceed in that manner. Counsel presented no concerns about competence at the subsequent guilty plea hearing and, at sentencing, counsel commented:

> [Barger has] indicated to me on a number of occasions that he wants to be involved in the legal research. As the court knows, he has an inquiring mind and it's a relatively bright mind. And he has done a number of research efforts in specific areas. I think he has the ability to assist his appellate public defender.

Counsel further commented that Barger has read Idaho Supreme Court opinions and understands them and explained:

> Mr. Barger sometimes gets frustrated, but this court noted in the past that he has been able to understand the proceedings in terms of what this court expects and he's been able to be in this [sic] compliance. I would report to the court that he has a far better understanding than when he started this case out and I think that's been meaningful for him in terms of how the legal system works.

In sum, the information available to the district court was insufficient to raise a bona fide or good-faith doubt as to Barger's competence. Thus, due process did not require a competency hearing or evaluation prior to entry of judgment on Barger's knowing, voluntary, and intelligent guilty plea.

## B.      Motion to Dismiss

Mindful of the lack of legal authority supporting his position, Barger argues that the district court erred in denying his pro se motion to dismiss. A party waives an issue on appeal if either authority or argument is lacking. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996). Barger's claim that the district court erred by denying his motion to dismiss is supported by neither cogent argument nor legal authority. Consequently, Barger has waived the claim of error on appeal.

**IV.**

**CONCLUSION**

The evidence before the district court was insufficient to support a bona fide or good-faith belief that Barger was mentally incompetent. Thus, Barger has failed to show that the absence of a mental competency evaluation prior to the acceptance of his guilty plea violated his due process rights. Additionally, Barger has waived the issue that the district court erred in denying his motion to dismiss. Barger's judgment of conviction for possession of a controlled substance is affirmed.

Chief Judge HUSKEY and Judge BRAILSFORD, **CONCUR**.