**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 47827**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: December 13, 2021 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| CASEY MARIE WILSON, | ) OPINION AND SHALL NOT |
| | ) BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Benjamin J. Cluff, District Judge.

Judgment of conviction for felony possession of methamphetamine, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Casey Marie Wilson appeals from his judgment of conviction for felony possession of methamphetamine. Idaho Code § 37-2732(c)(1). Wilson argues that the State presented insufficient evidence to support the jury's finding that he was in possession of methamphetamine and that the prosecutor made several statements to the jury which violated his constitutional rights. For the reasons set forth below, we affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Officers executed a search warrant on a house at which Wilson was a guest. After finding methamphetamine in a safe owned by the owner of the house, the officers proceeded to search a basement room Wilson occupied the night before. Wilson was in the room, standing near a bed, along with another individual identified as T.N. After removing Wilson and T.N. from the room,

officers found a plastic bag with traces of methamphetamine along with Wilson's and T.N.'s identification on the floor next to where Wilson was standing. Officers also found a scale and a small bag of methamphetamine inside a flashlight in a trunk in the room which contained Wilson's clothing.

Wilson was charged by information with felony possession of methamphetamine, misdemeanor possession of drug paraphernalia, and misdemeanor frequenting a place where controlled substances are known to be located. Wilson exercised his right to a jury trial and was found guilty of felony possession of methamphetamine.[1] Wilson timely appeals.

## II.

## ANALYSIS

Wilson advances three arguments on appeal. First, Wilson argues that the evidence presented to the jury by the State was insufficient to support the jury's finding of guilt. Second, Wilson argues that the prosecutor violated Wilson's right to remain silent and to a fair trial by eliciting testimony on his silence and using his silence to imply guilt. Finally, Wilson argues that the prosecutor committed misconduct in closing arguments by shifting the burden of proof, again using evidence of Wilson's silence to imply guilt, attacking Wilson's decision to go to trial, and by disparaging the defense. We address each of these arguments below.

### A.  Sufficiency of Evidence

Wilson argues that the State did not present sufficient evidence to support the jury's finding of guilt. Specifically, Wilson argues that the State failed to produce sufficient evidence that he possessed the methamphetamine on the floor and in the flashlight in the trunk, because the methamphetamine was found in a situation of joint occupancy and the State could only show proximity rather than possession.

Appellate review of the sufficiency of the evidence is limited in scope. A finding of guilt will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the

---

[1] The State dismissed the misdemeanor charges.

2

weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we will consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

Possession may be either actual or constructive. *State v. Southwick*, 158 Idaho 173, 178, 345 P.3d 232, 237 (Ct. App. 2014). In order to prove constructive possession, knowledge and control of the controlled substance must each be independently proven beyond a reasonable doubt by either circumstantial or direct evidence. *State v. Seitter*, 127 Idaho 356, 360, 900 P.2d 1367, 1371 (1995); *State v. Rozajewski*, 130 Idaho 644, 647, 945 P.2d 1390, 1393 (Ct. App. 1997); *see also State v. Betancourt*, 151 Idaho 635, 638, 262 P.3d 278, 281 (Ct. App. 2011). Constructive possession of a controlled substance exists where a nexus between the accused and the substance is sufficiently proven so as to give rise to the reasonable inference that the accused was not simply a bystander but, rather, had the power and intent to exercise dominion and control over the substance. *Rozajewski*, 130 Idaho at 647, 945 P.2d at 1393.

The evidence presented to the jury at trial included the following facts. Officers executed a search warrant at the home in which Wilson and T.N. were guests. After Wilson and T.N. refused to open a bedroom door, officers forced the door open to find Wilson standing near the bed. After removing Wilson and T.N. from the room, officers found a bag containing trace amounts of methamphetamine, Wilson's and T.N.'s identification, and cash and other items on the floor next to where Wilson was standing. Upon further investigation, more methamphetamine was found in a flashlight in a trunk containing clothing. Wilson told the officers that he normally carried the IDs found on the floor in his wallet and that both he and T.N. had clothing in the trunk with the flashlight. Wilson also told officers that the methamphetamine did not belong to T.N.

Wilson argues that this evidence was insufficient to support the jury's finding that he actually possessed the methamphetamine, as it could not establish a nexus between Wilson and the methamphetamine sufficient to give rise to the reasonable inference that he had the power and intent to exercise dominion and control over the substance. Rather, Wilson asserts the State's evidence could only establish proximity. We disagree. The fact that the first bag was found on the floor among Wilson's other possessions and the second bag was found in a trunk containing his clothing, coupled with his statement that the methamphetamine did not belong to T.N., provides

3

substantial evidence supporting the jury's finding that Wilson had the power and intent to exercise dominion and control of the methamphetamine. Therefore, we hold that the State presented sufficient evidence to support the jury's finding.

**B.      Cross-Examination**

Wilson next argues that his right to a fair trial was violated by the prosecutor's unobjected-to comments on Wilson's choice to remain silent when he was initially interviewed by officers post-*Miranda*.[2] The State argues that Wilson never invoked his right to remain silent, and the prosecutor's comments were proper in highlighting inconsistencies between Wilson's statements to officers at the time of his arrest and during trial.

While our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, the prosecutor is nevertheless expected and required to be fair. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007). However, in reviewing allegations of prosecutorial misconduct we must keep in mind the realities of trial. *Id.* A fair trial is not necessarily a perfect trial. *Id.*

Wilson made no contemporaneous objection to the prosecutor's statements at trial. Where alleged prosecutorial misconduct was not objected to during trial, this Court may only reverse when the misconduct constitutes fundamental error. *State v. Miller*, 165 Idaho 115, 122, 443 P.3d 129, 136 (2019). In order to obtain relief under the fundamental error doctrine, the defendant must demonstrate three things. *Id.* at 119, 443 P.3d at 133. First, the defendant must show that one or more of the defendant's unwaived constitutional rights were violated. Second, the error must be clear and obvious, which means the record must demonstrate evidence of the error and evidence as to whether or not trial counsel made a tactical decision in failing to object. *Id.* Third, the defendant must demonstrate that the error affected the defendant's substantial rights, meaning that the error identified in the first and second prongs of the test actually affected the outcome of the trial proceedings as evidenced by the record. *Id.* at 119-20, 443 P.3d at 133-34.

The Fifth Amendment of the United States Constitution guarantees that "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. The Idaho Supreme Court has held that the Fifth Amendment prohibits the State from inferring guilt from a defendant's post-custody silence during its case-in-chief. *State v. Ellington*, 151 Idaho

---

[2]      *See Miranda v. Arizona*, 384 U.S. 436 (1966).

53, 60, 253 P.3d 727, 734 (2011). In order to obtain the Fifth Amendment's protection, a defendant must claim it.

Wilson testified in his defense at trial. During cross-examination, he testified that he threw a blanket on the bed in the dark and that the bag on the floor may have fallen out at that time. The prosecutor then questioned Wilson on why he had not told officers at the scene, or in the year and nine months leading up to trial, that he had thrown a blanket in the dark and that the bag may have fallen out at that time.

Wilson argues that this line of questioning by the prosecutor amounted to fundamental error, as it violated his rights under the Fifth Amendment. However, as the State points out, Wilson did not at any point in the investigation invoke his right to remain silent. Rather, Wilson spoke with the officers but omitted the blanket theory until trial, and indicated that this omission was merely due to the fact that the officers did not ask. The prosecutor's comments were not meant to invite the jury to infer guilt based on Wilson's invocation of his right to remain silent, but were meant to highlight an inconsistency between his statements to the officers and to the jury at trial. Therefore, Wilson's Fifth Amendment rights were not violated.

## C. Closing Argument

Wilson argues that the prosecutor committed misconduct in closing arguments by shifting the burden of proof, again using evidence of Wilson's silence to imply guilt, attacking Wilson's decision to go to trial, and by disparaging the defense. Wilson likewise did not object to these statements during trial, therefore this Court reviews for fundamental error.

### 1. Burden of proof

Wilson first argues that the prosecutor shifted the burden of proof during closing arguments. Wilson's defense during closing argument included a theory that the methamphetamine belonged to the owner of the home. In response, the prosecutor pointed out that Wilson had not called the owner to testify and stated: "If this was hers, why didn't the defense call her?" Wilson argues that this constituted an improper attempt to place the State's burden of proof on Wilson.

Direct and indirect comments on the defendant's failure to testify at trial are forbidden. "The rule, however, does not extend to comments on the state of the evidence or on the failure of the defense to introduce material evidence or to call logical witnesses." *State v. Hodges*, 105 Idaho 588, 592, 671 P.2d 1051, 1055 (1983). Similarly, "[a] prosecutor's comment

5

on a defendant's failure to call a witness does not shift the burden of proof, and is therefore permissible, so long as the prosecutor does not violate the defendant's Fifth Amendment rights by commenting on the defendant's failure to testify." *United States v. Cabrera*, 201 F.3d 1243, 1250 (9th Cir. 2000). The prosecutor's comments on Wilson's failure to call the owner of the home did not shift the burden of proof and were therefore proper. Wilson provides no contrary authority. Therefore, Wilson has failed to establish that these comments violated a constitutional right.

### 2. Right to remain silent

Wilson again argues that the prosecutor's statements on his failure to bring up the blanket theory earlier, this time during closing arguments, were improper. As indicated above, we hold that the statements were not improper, this argument likewise fails.

### 3. Right to trial

Wilson next argues that the prosecutor attacked his choice to exercise his constitutional right to a jury trial. During closing arguments, the prosecutor told the jury that Wilson could have told his story without going to trial but "instead, he hires an attorney, pays the attorney, goes through the work, time, and expense of a jury trial instead. Ladies and gentlemen, that makes no sense." Wilson argues this was an attempt to inflame the jury by implying that Wilson was wasting the court's time.

While these statements from the prosecutor were improper, Wilson has failed show that they were so egregious as to result in fundamental error. As noted, as to the second prong of the fundamental error standard, the record must yield evidence as to whether or not trial counsel made a tactical decision in failing to object. Wilson fails to point to such evidence in the record. Instead, Wilson argues that "there is simply no strategic or tactical advantage to be gained by" not objecting. One could nearly always make such an argument, but the standard set out in *Miller* demands more. The prosecutor's statements were an extension of the back and forth at trial regarding the origin and lack of communication of Wilson's blanket theory at trial. Without evidence in the record demonstrating that the failure to object was not tactical, as opposed to Wilson's argument, the second prong of the fundamental error standard is not satisfied.

The third prong of the fundamental error standard requires that error identified in the first and second prongs actually affected the outcome of the trial proceedings. *Miller*, at 119-20, 443 P.3d at 133-34. Wilson merely points out that the prosecutor's remarks were part of the State's rebuttal argument and notes that in *State v. Saenz*, 167 Idaho 443, 451, 470 P.3d 1252, 1260 (Ct.

6

App. 2020) this Court acknowledged the potential increased impact of prosecutorial misconduct in a rebuttal closing argument. However, the mere fact that the remark was made in rebuttal, does not amount to evidence from the record demonstrating actual effect on the outcome of the trial. The prosecutor's comment was part of the back and forth regarding the belated blanket theory. To the extent, as Wilson contends, the prosecutor was wasting the jury's time. The district court instructed the jury to apply the facts and let neither sympathy nor prejudice influence their deliberations. We presume that the jury followed the district court's instructions. *State v. Iverson*, 155 Idaho 766, 776, 316 P.3d 682, 692 (Ct. App. 2014).

### 4.     Disparaging the defense

Wilson argues that statements made by the prosecutor disparaging the defense constitute fundamental error. Wilson argues that these statements misrepresented and disparaged the defense and violated his right to a fair trial and to present a defense.

The prosecutor's closing argument should not include disparaging comments about opposing counsel. *State v. Timmons*, 145 Idaho 279, 289, 178 P.3d 644, 654 (Ct. App. 2007). When prosecutorial misconduct occurs at trial without objection, the misconduct will serve as a basis for setting aside a conviction only when the "conduct is sufficiently egregious to result in fundamental error." *State v. Porter*, 130 Idaho 772, 785, 948 P.2d 127, 140 (1997).

During closing arguments, the prosecutor made the following statement:

If it's not yours, then it doesn't matter if it's meth. But no. No. They fought the State for half an hour.
        So the lab report came in. And then they had to take more drastic measures. They couldn't cover up that it wasn't meth anymore. They couldn't keep that out. So now the story that's been waiting for one year and nine months comes in.

Wilson argues that these statements violated his Sixth Amendment rights to present a defense. While these statements from the prosecutor may have been improper, and we caution against the use of such tactics or statements, the record does not show that the violation was so egregious as to constitute fundamental error. Not every improper argument rises to the level of fundamental error. *State v. Perry*, 150 Idaho 209, 230, 245 P.3d 961, 982 (2010).

Again as noted, the second prong of the fundamental error standard requires evidence from the record itself that shows a clear violation exists and that the decision whether or not to object to an error at trial was strategic. *Id.* at 229, 245 P.3d at 981. Wilson's counsel admitted to playing "lawyer games" during the trial, strongly suggesting that trial tactics were employed and any failure to object was a strategic decision.

Finally, Wilson has failed to show that these statements actually affected the outcome of the trial. As he does generally throughout his arguments, Wilson again argues that the State's evidence was weak and insufficient to support the jury's finding of guilt. Having found that the evidence was otherwise sufficient, Wilson's argument fails to demonstrate from the record that the statements affected the outcome of the trial

## III.
## CONCLUSION

The evidence submitted by the State was sufficient to support the jury's finding of guilt. Further, none of the asserted misconduct on the part of the prosecutor constituted fundamental error. Therefore, we affirm Wilson's judgment of conviction and sentence.

Chief Judge HUSKEY and Judge BRAILSFORD **CONCUR**.